CARMEN SÁNCHEZ RODRÍGUEZ, ETC., demandantes y peticionarios, *v.* ANTONIO LÓPEZ JIMÉNEZ, ETC., demandados y recurridos.

*Número:* CE-86-520     *Resuelto:* 20 de abril de 1987

*Maritza Pagán de Joglar,* de *Dávila & Pagán,* abogada de los peticionarios; *Carlos R. Ríos Gautier,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Este recurso acorta el largo y tortuoso camino judicial iniciado por un hijo para vindicar sus derechos hereditarios frente a sus familiares más inmediatos y terceros. Confiamos que esté próximo a terminar su travesía y pueda lograr cumplida justicia. En esa tarea, "[p]ara darle a cada uno lo suyo, para hacer justicia, deberán seleccionarse cuidadosamente los elementos a emplear. Así como al realizar una escultura no puede utilizarse un cortafierro cuando resulta adecuado un cincel, ni viceversa, en la función judicial tampoco debe olvidarse esta regla: la herramienta (el lenguaje) deberá seleccionarse en función de la materia a tratar (la relación jurídica). Todo ello conformará y devendrá, simultáneamente, en y desde un método, camino necesario para analizar la realidad, y luego de ello conceptualizarla para arribar más tarde a la meta que será, en nuestro caso, realizar la justicia". J. E. Leonetti, *El llamado "mundo jurídico" y la realidad*, 1984-A Rev. Jur. Arg. La Ley 364 (1984).

I

Los antecedentes procesales y fácticos del recurso fueron objeto de nuestra decisión emitida en *Sánchez Rodríguez* v. *López Jiménez*, 116 D.P.R. 172 (1985). Su génesis fue una venta ilegal y fraudulenta de la mitad pro indiviso de un inmueble del caudal hereditario del causante Obdulio Correa Rodríguez —fallecido el 2 de noviembre de 1955— en perjuicio de su hijo coheredero Obdulio Correa Sánchez. La comparecencia espuria en su ejecución instrumental fue producto del abogado notario José R. Fournier. Con el conocimiento y consentimiento de Carmen Sánchez Rodríguez y Carmen Belén Correa —viuda e hija respectivamente del causante Correa Rodríguez— y de los compradores esposos Antonio López Jiménez y Margot Felices Saenz, se hizo figurar al fallecido otorgante de la Escritura Pública Núm. 212 fechada 16 de

agosto de 1955, y así aparentar que la venta fue anterior a su muerte. Para ello se falsificó su firma con la intervención activa y fraudulenta del notario José R. Fournier.

Décadas después se descubrió el fraude. El 4 de septiembre de 1981, Correa Sánchez demandó a su madre, hermana y a los compradores. Al tiempo enmendó la demanda para incorporar como codemandantes a esos familiares. Subsistieron como demandados los compradores esposos López-Felices. Estos reconvinieron contra la hermana y madre del demandante Correa Sánchez por su participación en el fraude. El Tribunal Superior, Sala de Bayamón, el 13 de abril de 1984, declaró con lugar la demanda principal del perjudicado Correa Sánchez contra los compradores esposos López-Felices. Decretó nulo el negocio jurídico por causa ilícita imputable a *todos* los contratantes. Como consecuencia, negó remedio a la viuda e hija contra los compradores y viceversa. Desestimó las restantes reclamaciones.

Nuestra decisión, si bien confirmó esa sentencia, la modificó y ordenó la continuación de los procedimientos. En lo pertinente resolvimos: "No debe confundirse el impedimento *ipso jure* de las partes contratantes declaradas incursas en ilicitud o torpeza de causa para repetir —como pretendían las codemandantes Sras. Sánchez Rodríguez y Correa Sánchez— con la capacidad de reclamarse recíprocamente responsabilidad frente a un tercero que no fue parte en la transacción ilegal."

Así las cosas, el 23 de junio de 1986, el tribunal de instancia dictaminó que Carmen Sánchez Rodríguez y Carmen Belén Correa Sánchez tenían que responder a los esposos López-Felices de *todo* lo que éstos tuvieren que satisfacer a Obdulio Correa Sánchez. Inconformes, a solicitud de ellas concedimos término a los recurridos López Jiménez, *et al.*, para que mostraran causa por la cual no debíamos modificar esa resolución y decretar que la responsabilidad de Carmen Sánchez Rodríguez, Carmen Belén Correa Sánchez, Antonio López Jiménez

y su esposa Margot Felices Saenz —frente a Obdulio Correa Rodríguez— es solidaria y por ende, en su relación interna, debe ser dividida en tres partes iguales. Los recurridos López Jiménez, *et al.*, han comparecido.

En esencia, éstos propugnan la tesis —con vista a la totalidad de la prueba— que la conducta de Antonio López Jiménez fue "relativamente pasiva", y por ende, no debe ser responsabilizado, en unión a las peticionarias, por partes iguales. A su vez, contrario a nuestras decisiones previas, argumentan y sostienen que la participación de Antonio López Jiménez en el negocio jurídico fue *bona fide*, inducido y engañado por la conducta del Lic. José R. Fournier.

## II

█ Deslindemos el horizonte decisorio. No nos corresponde en esta etapa reexaminar nuevamente aquellos planteamientos de las partes que con anterioridad fueron adjudicados por el foro de instancia y este Tribunal. Esos derechos y responsabilidades gozan de las características de finalidad y firmeza con arreglo a la doctrina de la *Ley del Caso*. No pueden revisarse. *Candelaria* v. *Mun. de Ceiba*, 114 D.P.R. 155, 156–157 (1983); *Rivera* v. *Insurance Co. of P.R.*, 103 D.P.R. 91, 94 (1974); *Don Quixote Hotel* v. *Tribunal Superior*, 100 D.P.R. 19, 29–30 (1971); *Srio. del Trabajo* v. *Tribunal Superior*, 95 D.P.R. 136, 140 (1967); *Martínez* v. *Tribunal de Distrito*, 69 D.P.R. 552, 555 (1949).

Ante este marco jurídico —adjudicada previamente la controversia relativa a la responsabilidad solidaria de las peticionarias y el recurrido López Jiménez y su esposa Margot Felices Saenz frente a Correa Sánchez— sólo nos incumbe resolver, por vía de aclaración, la extensión de dicha responsabilidad en la dimensión interna a la luz de la conducta específica, participación e intervención de las partes. [1]

---

[1] El tribunal de instancia estimó que la procedencia de la tercera reconvención de López Jiménez contra las peticionarias, tuvo el efecto de que

## III

El planteamiento toca una de las áreas más fascinantes del derecho, a saber, el llamado acto ilícito culposo. Afortunadamente han quedado atrás los debates doctrinales y judiciales. [2] Hoy la conclusión, casi universal, es la existen-

---

éstas le respondiesen por la *totalidad* de lo que tuviera que pagar a Obdulio Correa Sánchez.

Dicho análisis es incorrecto. Nuestro pronunciamiento al permitir tal reconvención, no hizo más que esclarecer el alcance de las reclamaciones de los codemandados entre sí (Carmen Sánchez, Carmen Belén Correa y López Jiménez), para responder frente a un tercero que definitivamente no intervino en la transacción ilegal. Resolvimos que dicha reconvención no contradecía el principio de la causa ilícita o torpe ni impedía la repetición. En ese sentido, al reconocer que López Jiménez tenía una causa de acción por vía de repetición contra Carmen Sánchez y Carmen Belén Correa, no hicimos más que salvar la laguna procesal provocada por el proceder del demandante Obdulio Correa Sánchez de acumular a *las peticionarias* —que originalmente figuraban *como demandadas*— *como demandantes*. Ello perseguía que sólo López Jiménez, *et al.*, figuraran como únicos demandados. La imposición de responsabilidad solidaria a dichas partes viabilizó dicha reconvención, sin que ello implicara, lógicamente, una imposición de responsabilidad total (100%) a las peticionarias Carmen Sánchez y Carmen Belén Correa. Incuestionablemente, López Jiménez, por efectos de nuestra decisión, también incurrió en responsabilidad.

[2] Nuestra jurisprudencia proclama el principio de solidaridad entre los cocausantes del daño frente al perjudicado. *Ramos* v. *Caparra Dairy, Inc.*, 116 D.P.R. 60 (1985); *Soc. de Gananciales* v. *Soc. de Gananciales*, 109 D.P.R. 279, 288 (1979); *Merle* v. *West Bend Co.*, 97 D.P.R. 403, 405 (1969); *Serralta* v. *Martínez Rivera*, 97 D.P.R. 466, 470 (1969); *Torres* v. *A.M.A.*, 91 D.P.R. 714, 717 (1965); *Marcano Torres* v. *Fuentes Fluviales*, 91 D.P.R. 654, 659 (1965); *Cortijo Walker* v. *Fuentes Fluviales*, 91 D.P.R. 574, 581 (1964); *García* v. *Gobierno de la Capital*, 72 D.P.R. 138 (1951). Véase *Díaz Bonilla* v. *Tribunal Superior*, 98 D.P.R. 49 (1969).

Respecto a la relación interna, en *Security Ins. Co.* v. *Tribunal Superior*, 101 D.P.R. 191, 206–208 (1973), hicimos una breve incursión en la jurisdicción norteamericana, y dijimos:

"Sobre este particular señala Prosser que la mayoría de las jurisdicciones que reconocen el derecho a contribución entre los cocausantes de un daño siguen la norma de que 'en la igualdad está la equidad' (*equality is equity*); es decir, lo justo es repartir el efecto oneroso por partes iguales entre los cocausantes, sin tomar en cuenta gradaciones de negligencia entre ellos. Pero hay también algunas jurisdicciones que por ley o por jurisprudencia han establecido la norma de que se distribuirá el efecto oneroso entre

cia de solidaridad cuando varias personas intervienen o coope-
ran en la realización de un daño. En tales circunstancias cada
uno queda obligado personalmente por razón de su propia
culpa. F. Soto Nieto, *La responsabilidad civil derivada del
ilícito culposo*, Madrid, Ed. Montecorvo, 1982, págs. 81–86.

El principio de la solidaridad es de viejo cuño. Su origen
se remonta al siglo XVIII con la teoría de Pothier, *Des obli-
gations* (Oeuvres, ed. 1825, T. I, Núm. 268), según la cual
los que han " 'concurrido a un delito civil, están todos obliga-
dos solidariamente a la reparación. No pueden oponer ninguna
excepción . . . de división, siendo indignos de ella' ". M. Albala-
dejo, *Sobre la solidaridad o mancomunidad de los obligados a
responder por acto ilícito común*, 16 An. Der. Civ. 345, 351
n. 6 (1963).

La solución no puede ser más justa. Desde comienzos del
siglo XIX autores como Giorgi, Maroi y Venezian ya aludían
al hecho dañoso que tiene por causa una deliberación tomada
de común acuerdo o intervención material de varios autores.
De Cupis, por su parte, insistía en la *unidad* del acto, producto
de un haz de actividades concurrentes subjetivamente distin-
tas y con diversos sujetos. Albaladejo, *op. cit.*, pág. 367 n. 25.

---

los cocausantes en proporción a sus *respectivas* negligencias. Prosser [*op.
cit.*], pág. 310.

"Apoyando la doctrina de las 'cuotas iguales' tenemos, entre otros, los
siguientes casos . . . . En cambio, la doctrina de 'cuotas proporcionales a la
negligencia' ha sido utilizada en . . . . En la relación interna entre co-
causantes de un daño, al fijar la proporción que en contribución o repetición
tiene un cocausante contra el otro, nos parece más justa y razonable la
norma que establece que el efecto oneroso entre los cocausantes debe distri-
buirse en proporción a sus respectivas negligencias. [E]l repartir la carga
económica del daño entre los cocausantes según sus distintos grados de ne-
gligencia sería una aplicación concreta, un refinamiento que se acercaría
más a la equidad absoluta." (Énfasis suplido y citas omitidas.)

La decisión de hoy en el caso de autos no afecta, sino esclarece esta
doctrina en uno de sus extremos hasta ahora no pautados en nuestra juris-
prudencia. Obviamente, los pronunciamientos en *Security Ins. Co.* v. *Tribu-
nal Superior*, supra, están basados en que allí existió y medió una *determi-
nación judicial de la proporción exacta de culpa de los cocausantes* (75% y
25%). Esa cuantificación no está aquí presente.

Ya en el siglo XX, no cabe duda de la universalización del principio de la solidaridad en materia de responsabilidad civil extracontractual. En Francia, autores como Mazeaud y Tunc, Aubry y Rau, Carbonnier, Planiol y Ripert, Vincent, De Acutis, Rubino y Albertatario sintonizan con la corriente de pensamiento que propulsa la responsabilidad colectiva de cuantos intervinieron en la inflicción del daño. Igual derrotero siguió la jurisprudencia de las cortes francesas. Soto Nieto, *op. cit.*, págs. 81–83. En España la doctrina mayoritaria se mostró abiertamente en favor del reconocimiento de la solidaridad. Sólo Traviesas, Díaz Pairó y Albaladejo se apartan de la posición mayoritaria. V. Guilarte Zapatero, *Comentarios al Código civil y compilaciones forales*, Madrid, Ed. Revista de Derecho Privado, 1983, T. XV, Vol. 2, pág. 224; Albaladejo, *op. cit.*, pág. 358. Pero fueron los italianos quienes lograron la expresión más refinada del principio de la solidaridad extracontractual. A tal efecto, el Art. 2055 del Código Civil italiano expresa magistralmente que cada cocausante debe responder "en la medida de la gravedad de la respectiva culpa y de la entidad de las consecuencias derivadas de ella. En la duda las respectivas culpas se presumen iguales". Igual postura asumen los alemanes. Albaladejo, *op. cit.*, págs. 374–375.

■ La complejidad emergente del concepto de "culpa", con sus notables variaciones cualitativas y cuantitativas —en algunos casos infinitesimales— ha promovido la imposición de responsabilidad por partes iguales entre los cocausantes del daño en el derecho civil contemporáneo. Ante la imposibilidad de atribuir, a priori, la parte que cada uno de los partícipes ha tenido en la producción del daño, cada uno responde al perjudicado en su totalidad por el *damnum,* sin distinción de la intensidad o gravedad de sus respectivas culpas.

Carentes de suficientes determinaciones que permitan hablar de una proporcionalidad en la generación causal del hecho, habrá de aceptarse un derecho de nivelación en el que se

parta de una igualdad en las cuotas contributivas de los co-causantes. Soto Nieto, *op. cit.*, pág. 92.

La distinción del género de actividad es importante. Tra-tándose de actuaciones *independientes* (objetivas), cuyos efec-tos dañosos tienen distinto origen, la imposición de solidaridad no es automática. La solución estriba en detectar la porción del daño atribuible a cada acción. Soto Nieto, *op. cit.*, pág. 90; Albaladejo, *op. cit.*, pág. 372.

De otra parte, cuando nos hallamos ante la presencia de cocausantes que han *cooperado consciente y voluntariamente* en la realización del acto dañoso, la solución se simplifica (uni-dad de acción). La jurisprudencia española se inclina decidi-damente en favor de la imposición de cuotas contributivas iguales cuando enfrentamos un acto ilícito culposo *intencio-nal*.([3]) En resumen, "[c]uando nos hallamos ante la presencia

---

([3]) Entre éstas, cabe destacar las siguientes sentencias: de 2 de marzo de 1915, que impone responsabilidad solidaria por haberse llevado a cabo el acto dañoso por "acuerdo" de los autores; la de 25 de marzo de 1957 que enfatiza la "actuación unida y solidaria" en connivencia del defensor y padre de un menor para despojarle de bienes hereditarios "que no puede menos de engendrar, como queda expuesto, una responsabilidad de igual naturaleza si ha de ser garantizada la reparación del daño causado . . ."; la de 20 de mayo de 1959, que señala la responsabilidad solidaria de los demandados que "son igualmente responsables de las consecuencias de su conjunta y mala ges-tión . . .", que se funda "en la existencia de *dolo civil* y cobro de lo inde-bido . . . *por dolo se entiende todo complejo de malas artes, contrario a las leyes de la honestidad e idóneo por sí para sorprender la buena fe ajena generalmente en propio beneficio, tratándose por eso de un acto ilícito, en que viene a resumirse el estado de ánimo de aquel que no sólo ha querido el acto que constituye infracción al principio genérico del 'alterum non leadere', sino que también ha previsto y querido las consecuencias antijurídicas de él provenientes* . . ."; la de 20 de mayo de 1968, expositiva de que aquella negli-gencia imputable a más de un solo sujeto "sin que existan elementos que permitan hacer diferencias respecto de la participación de cada uno . . ."; la de 20 de febrero de 1970, que advierte que "cuando los causantes y culpa-bles sean varios, sobre cada uno de ellos pesará la obligación solidaria de reparar íntegramente el daño, sin perjuicio de que, en la relación interna entre los mismos, la deuda se presuma dividida en tantas partes iguales como deudores haya, salvo que del texto de la obligación resulte otra cosa, conforme preceptúa el art. 1138"; la de 4 de mayo de 1973, que postula el origen de la solidaridad cuando concurren varios en la comisión de un acto

de plurales causantes del hecho siniestral, y entre los mismos hubo *unidad de acción,* es decir, una cooperación consciente y querida, o bien se produjo *unidad de resultado,* al converger las varias actividades y originar de conjunto el *damnum* indemnizable, *sin posibilidad de atribución de porciones en su realización,* la obligación de reparar *in integrum* pesa sobre todos los obligados, deviniendo insoslayable el surgimiento del vínculo solidario". (Énfasis suplido.) Soto Nieto, *op. cit.,* págs. 100–101.

## IV

Bajo este panorama decisorio, no nos convence la tesis propuesta por los recurridos en alzada. La conclusión última que emerge de nuestra decisión en *Sánchez Rodríguez* v. *López Jiménez,* supra, pág. 177, es que al *mediar concierto y pleno conocimiento* de la ilicitud de la transacción llevada a cabo en la venta del 50% de un condominio pro indiviso explotado como motel, las peticionarias Carmen Sánchez, Carmen Correa y los recurridos López Jiménez y su esposa Margot Felices Saenz, "[c]onsintieron y participaron activamente en la misma . . . [l]a acogieron y promovieron hasta las últimas consecuencias". En particular, López Jiménez, quien adquirió la cuota del inmueble, también *ocultó reiteradamente* todo el negocio simulado e ilegal a Obdulio Correa Sánchez.

En su justa perspectiva, y atendido el curso de conducta *unitario* de las partes en la consecución y ejecución espuria de la referida compraventa —y concertado silencio— tales ac-

ilícito civil y *hay unidad de acción y resultado,* y la de 15 de octubre de 1976, que proclama la explicación "teórica y pragmática" como la imposición de responsabilidad solidaria, entre otras, como sanción por una falta o acto ilícito, bajo el supuesto de que la negligencia es imputable a más de un solo sujeto sin que existan elementos que permitan hacer diferencias respecto de la participación de cada uno; todo ello con el fin de garantizar la efectividad del remedio en virtud de la responsabilidad. Véase M. Albaladejo, *Sobre la solidaridad o mancomunidad de los obligados a responder por acto ilícito común,* 16 An. Der. Civ. 345, 352–357 (1963).

tuaciones no son susceptibles de ser medidas con rigurosa precisión en términos del efecto *oneroso* o *intensidad*. La naturaleza de la trama nos impide cuantificarla. Como corolario es procedente la imposición de responsabilidad solidaria en cuotas contributivas iguales a los cocausantes del daño. Arts. 1091 (⁴) y 1098 (⁵) del Código Civil, 31 L.P.R.A. secs. 3102 y 3109. *Security Ins. Co.* v. *Tribunal Superior*, 101 D.P.R. 191 (1973); Soto Nieto, *op. cit.*, págs. 91–92; Guilarte Zapatero, *op. cit.*, págs. 238–245, 347–348; Albaladejo, *op. cit.*, págs. 372–376; L. Diez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1983, Vol. 1, pág. 436; J. Castán Tobeñas, *Derecho Civil español, común y foral*, 13ra ed., Madrid, Ed. Reus, 1983, T. III, pág. 151; J. Caffarena Laporta, *La Solidaridad de Deudores*, Madrid, Ed. Rev. Der. Privado, 1980, pág. 253; J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1985, T. I, Vol. 2, págs. 171–172; J. Manresa *Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1967, T. VIII, Vol. 1, págs. 525–526 *Cf.* Art. 327 del Código Civil, 31 L.P.R.A. sec. 1272. (⁶)

(⁴) "Si del texto de las obligaciones a que se refiere la sección anterior no resulta otra cosa, el crédito o la deuda se presumirán divididos en tantas partes como acreedores o deudores haya, reputándose créditos o deudas distintos unos de otros." 31 L.P.R.A. sec. 3102.

(⁵) "El pago hecho por uno de los deudores solidarios extingue la obligación.

"El que hizo el pago sólo puede reclamar de sus codeudores la parte que a cada uno corresponda, con los intereses del anticipo.

"La falta de cumplimiento de la obligación por insolvencia del deudor solidario será suplida por sus codeudores a prorrata de la deuda de cada uno." 31 L.P.R.A. sec. 3109.

(⁶) "El concurso de los partícipes, tanto en los beneficios como en las cargas, será proporcionado a sus respectivas cuotas.

"Se presumirán iguales, mientras no se pruebe lo contrario, las porciones correspondientes a los partícipes en la comunidad." 31 L.P.R.A. sec. 1272.

## V

Esta solución es justa. Se impone con miras a lograr una balanceada retribución y calificación de la responsabilidad de cada una de las partes. Después de todo, es innegable la conclusión de que todos produjeron un resultado mediante una actuación conjunta y planificada, a tal punto, que transcurrieron más de veinte (20) años sin que pudiera descorrerse el velo de la confabulación y el engaño.

La pretensión de cualesquiera partes, especialmente López Jiménez, de eximirse de responsabilidad en el presente, so pretexto de una supuesta intervención "pasiva" —que no encuentra apoyo en el récord— choca contra la más elemental noción de justicia que instintivamente posee el jurisprudente. Por su sabiduría, vale reproducir las siguientes expresiones de la ilustrada sala de instancia —con vigencia hoy— en ocasión de su dictamen original de 13 de abril de 1984:

Los hechos de este caso se remontan hasta la década del 1950. El tiempo transcurrido necesariamente hace que se afecte el recuerdo de las personas de lo realmente ocurrido hace casi tres décadas atrás. Ello dificulta grandemente el dirimir las múltiples controversias inmersas en esta acción.

No es ésta, sin embargo, la mayor dificultad. La ocultación voluntaria, tratando de evitar que aflorara a la luz pública una situación que envolvía actos ilícitos y en pugna con la ética profesional, y la desfiguración de la verdad por mucho tiempo, añaden obstáculos a nuestra labor. Aun hoy, después de intentar subsanar la gravedad y la impropiedad de la actuación, voluntaria o involuntariamente, no se trae a la luz toda la verdad. Esta situación inesquivablemente crea una sobreabundancia de contradiciones entre uno y otro testigo, y a[u]n entre los testimonios vertidos por un mismo testigo en distintas fechas. Ello nos exige un esfuerzo adicional para buscar y rebuscar esa verdad aun allí donde se le quiere esconder. Siempre hay el riesgo de la equivocación, propio de cualquier acto humano. Para evitarlo al máximo fuimos flexibles en la aplicación de las normas evidenciarias, evitando

que el rigorismo impidiera conocer hechos que debíamos tener presentes en nuestra tarea adjudicativa.

A lo antes dicho hay que añadir la dificultad que se crea por el deseo de una parte de lucrarse más allá de lo que se tiene derecho, aprovechándose de la situación a la que se ve sometida la otra parte. Intentaremos por ello disponer de las controversias ponderando la ilegitimidad de algunas actuaciones, sin permitir que impere lo que pudiera ser un enfoque ventajista del reclamo.

Resolver las cuestiones centrales en torno a las cuales gira esta acción es difícil también para cualquier juez, por las partes envueltas en el caso y por la forma en que el dictamen afecta la reputación de otras familias indirectamente aquí envueltas. Habrá siempre incomprensión, si [no] por los abogados, por partes, testigos y público en general, hacia nuestra final determinación. Ello, sin embargo, no puede impedir que obviando escrúpulos personales emitamos el juicio que conforme a nuestra conciencia judicial consideramos que es el que procede en el caso. Si surge incomprensión la toleraremos y la comprenderemos. Pero la anticipación de que ello va a ocurrir no será óbice para que dispongamos de lo que, conforme a nuestro humano criterio judicial, es la justicia del caso. (Escolio omitido.) *Exhibit* III, págs. A-5–A-7.

■ Recapitulando, ante la ausencia de prueba y la dificultad inherente de precisar todos los elementos tangibles e intangibles de la dinámica dolosa y continua en que incurrieron las partes, el ideal de mayor aproximación judicial queda sólo y plenamente satisfecho, mediante la aplicación de la fórmula general en que se apuntala la doctrina vigente: solidaridad frente al perjudicado, y distribución en partes iguales en la relación interna de los deudores.

Por los fundamentos expuestos, *se dictará sentencia que expida el auto de certiorari y que modifique la resolución recurrida, a los únicos fines de establecer que la responsabilidad de las peticionarias Carmen Sánchez Rodríguez, Carmen Belén Correa Sánchez y el recurrido Antonio López Jiménez y su esposa Margot Felices Saenz deberá ser fijada a base de*

*cuotas contributivas iguales, tomando como divisor los cuatro (4) protagonistas del drama.* ([7])

El Juez Presidente Señor Pons Núñez se inhibió. El Juez Asociado Señor Rebollo López no intervino.

---

([7]) Originalmente nuestra orden de mostrar causa intimaba que debería distribuirse entre tres (3).