| | |
|---|---|
| Carmen T. Rosso Descartes t/c/c Carmen Rosso de Irizarry <br><br> Peticionaria <br><br> v. <br><br> Banco Gubernamental de Fomento Para Puerto Rico y otros <br><br> Recurridos | Certiorari <br><br> 2012 TSPR 164 <br><br> 187 DPR ____ |

Número del Caso: AC-2009-87

Fecha: 1ro de noviembre de 2012

Tribunal de Apelaciones:

      Región Judicial de San Juan

Abogado de la Parte Peticionaria:

      Lcdo. Alfredo Castellanos
      Lcda. Dayra Amill Acosta

Abogados de la Parte Recurrida:

      Lcdo. Jorge Peirats
      Lcdo. Manuel Herrero
      Lcdo. Carlos Santiago Tavarez
      Lcdo. Alberto Omar Jiménez
      Lcda. Ivette Berríos
      Lcdo. Vicente Zayas Plaza
      Lcdo. Benicio Sánchez Rivera
      Lcdo. Manuel García Malatrasi
      Lcdo. Thomas Doran Gelabert
      Lcdo. Edgardo Veguilla González
      Lcdo. Facundo Di Mauro Vázquez
      Lcda. Nilsa Morales Lehman

Oficina del Procurador General:

      Lcda. Zaira Girón Anadón
      Subprocuradora General

      Lcdo. Guillermo Mangual Amador
      Procurador General Auxiliar

Materia: Sentencia con Opinión Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen T. Rosso Descartes
t/c/c Carmen Rosso de
Irizarry

    Peticionaria

       v.

Banco Gubernamental de
Fomento para Puerto Rico y
Otros

    Recurridos

AC-2009-0087

SENTENCIA

San Juan, Puerto Rico, a 1 de noviembre de 2012.

Nos corresponde resolver si erró el Tribunal de Apelaciones al confirmar una sentencia emitida por el Tribunal de Primera Instancia. Mediante este último dictamen, el foro primario desestimó la demanda y ordenó el cierre definitivo del caso de epígrafe. Por entender que el foro primario actuó conforme al dictamen del Tribunal de Apelaciones, confirmamos la sentencia recurrida.

I

El caso ante nuestra consideración tiene su génesis en la expropiación de la Finca Rosso realizada por el gobierno de Puerto Rico el 5 de diciembre de 1963. Esta expropiación fue objeto de revisión y fue autorizada en el caso E.L.A.

v. Rosso, 95 D.P.R. 501 (1967), donde este Tribunal declaró constitucional la Ley de Administración de Terrenos, Ley 13 de 16 de mayo de 1962, 23 L.P.R.A. sec. 311 *et seq.* Luego de treinta y tres (33) años de emitida la decisión de este Tribunal en E.L.A. v. Rosso, *supra*, la señora Rosso Descartes presentó una demanda de sentencia declaratoria y otros remedios el 31 de octubre de 2000, enmendada el 10 de diciembre de 2003.[1]

En su demanda, la señora Rosso Descartes cuestionó la expropiación y alegó que ésta fue ilegal. De igual forma, cuestionó la legalidad de las transacciones post-expropiación y señaló que los terrenos fueron ilegalmente vendidos a terceros. Alegó que los demandados, sin mediar interés público o social, enajenaron ilegalmente las parcelas expropiadas a favor de empresas privadas con fines de lucro. En específico, impugnó la oferta de venta en pública subasta realizada por el Banco Gubernamental de Fomento (BGF) sobre una parcela segregada de la Finca Rosso. De igual forma, atacó la validez de otras transacciones similares con relación a las parcelas segregadas de la Finca Rosso. Además, arguyó que se le ha

---

[1] En la demanda fueron incluidos como demandados el Banco Gubernamental de Fomento para Puerto Rico (BGF), la Administración de Terrenos, el Estado Libre Asociado de Puerto Rico, el Departamento de Transportación y Obras Públicas, el Departamento de Vivienda, la Junta de Planificación, la Administración de Reglamentos y Permisos, el Departamento de Vivienda, el Municipio de Bayamón, la Comisión para el Desarrollo del Río Bayamón, y otros demandados de nombres conocidos y desconocidos. Entre estos demandados figuraban funcionarios gubernamentales, contratistas, desarrolladores y socios en su capacidad individual, bufete de abogados, abogados y notarios.

privado de su derecho legal sobre la finca expropiada y reclamó un derecho de adquisición preferente sobre el remanente de la Finca Rosso por haber cesado el fin público.

El Tribunal de Primera Instancia dictó sentencias parciales mediante las cuales desestimó la demanda contra algunos de los codemandados, entre éstos el Departamento de Vivienda, el Departamento de Transportación y Obras Públicas, la Administración de Reglamentos y Permisos y la Comisión para el desarrollo de Río Piedras.[2] Por otra parte, el foro primario notificó una resolución mediante la cual declaró "no ha lugar" una solicitud de sentencia sumaria parcial presentada por el BGF. Fundamentó su dictamen en que había controversia en cuanto a si el remanente de la Finca Rosso, cuya posesión ostenta el BGF, carecía de utilidad pública al momento de la publicación del aviso de subasta.[3] De igual forma, declaró "no ha lugar" la desestimación de la demanda contra el Jardín de Río Piedras, Inc., la Administración de Terrenos y el Municipio de Bayamón.

El 31 de marzo de 2005 el Tribunal de Apelaciones emitió una sentencia, notificada el 13 de abril de 2005, mediante la cual consolidó cuatro recursos de *certiorari*.

---

[2] El 27 de enero de 2005 el Tribunal de Primera Instancia notificó dos sentencias parciales mediante las cuales desestimó con perjuicio la demanda contra los codemandados Shabas, S.E., Shabas Corporation & D.J.S. Construction Corporation, Third Development, Inc. y Mora Development.

[3] Resolución del Tribunal de Primera Instancia de 25 de enero de 2005, Ap. pág. 148.

Luego de exponer los planteamientos de las partes, el tribunal determinó que la Ley de Venta de Propiedades Públicas, Ley Núm. 12 de 10 diciembre de 1975, 28 L.P.R.A. sec. 31 *et seq.*, no aplicaba al caso por lo que procedía desestimar las causas de acción bajo esta legislación contra las partes peticionarias. Determinó que el fin público no había cesado. Sostuvo que éste consistía en que la agencia pueda cumplir con los fines dispuestos en su ley orgánica y que la propiedad en disputa pueda desarrollarse de forma organizada e integrada. Además, expresó que la señora Rosso Descartes intentaba impugnar las transacciones realizadas por las agencias gubernamentales encargadas de implantar la política pública a raíz de la determinación de 1967. El foro apelativo intermedio sostuvo que el efecto de la demanda era tratar de relitigar lo resuelto. El Tribunal de Apelaciones estableció que las causas de acción no eran independientes y que, por el contrario, requerían cuestionar el dictamen de E.L.A. v. Rosso, *supra*.

El foro apelativo intermedio desestimó la demanda enmendada presentada por la señora Rosso Descartes contra el Departamento de la Vivienda, el Departamento de Transportación y Obras Públicas, la Administración de Reglamentos y Permisos y la Comisión para el Desarrollo del Río Bayamón, por carecer de personalidad jurídica para ser demandadas. En cuanto a los otros tres recursos, revocó las resoluciones recurridas y desestimó la demanda bajo las disposiciones de la Ley Núm. 12, *supra*, contra el Estado Libre Asociado, la Administración de Terrenos, el BGF y el

Municipio de Bayamón. El Tribunal de Apelaciones ordenó al Tribunal de Primera Instancia que continuara con los procedimientos de forma compatible con los pronunciamientos hechos en la sentencia dictada.

Inconforme, la señora Rosso Descartes presentó un recurso de *certiorari* ante nos. El 26 de agosto de 2005, notificada el día 30, emitimos una resolución mediante la cual declaramos "no ha lugar" la solicitud presentada por la señora Rosso Descartes. De igual forma, el 2 de octubre de 2006 el Tribunal Supremo de Estados Unidos denegó un recurso de *certiorari* presentado. Por tal razón, la sentencia del foro apelativo intermedio advino final y firme.

Así las cosas, el 18 de diciembre de 2007 el Tribunal de Primera Instancia emitió una resolución en la cual expresó que el Tribunal de Apelaciones había desestimado la demanda contra algunos de los codemandados. Además, expresó que lo decidido por el Tribunal de Apelaciones disponía de lo reclamado. Sostuvo el foro de instancia que para poder cerrar el caso procedía desestimar la demanda contra los otros codemandados que quedaban en el pleito.

El BGF presentó una moción para que se dejara sin efecto una vista que estaba pautada para cerrar el caso. Sostuvo que el pleito ya había sido adjudicado. La señora Rosso Descartes presentó una moción ante el Tribunal de Primera Instancia en la cual se opuso a la cancelación de la vista pautada. Basó su petición en que las circunstancias que dieron lugar a esa determinación habían

cambiado. Como motivo de cambio de circunstancias, señaló la emisión de un Informe Final realizado por la Comisión de Gobierno ordenado por la R. de la C. 6667 de 1 de mayo de 2007, 5ta Sección Ordinaria, 15ta Asamblea Legislativa.[4] Posteriormente informó acerca de la aprobación del Informe. Arguyó que éste tuvo el efecto de activar la controversia sobre derecho preferente de readquisición del remanente de la Finca Rosso en cuanto al BGF y otras agencias. El Tribunal de Primera Instancia, luego de celebrar vista para que la parte demandante argumentara por qué no se debía ordenar el cierre definitivo del caso, expresó que el informe presentado no revocaba la sentencia del Tribunal de Apelaciones la cual era final y firme. En consecuencia, el 27 de febrero de 2008 notificó una sentencia mediante la cual desestimó la demanda con perjuicio y ordenó el cierre definitivo del caso.

Inconforme con esta determinación, el 28 de abril de 2008 la señora Rosso Descartes presentó un recurso de apelación ante el Tribunal de Apelaciones. Señaló que el foro primario había interpretado erróneamente la sentencia del 31 de marzo de 2005 del Tribunal de Apelaciones.

---

[4]Informe Final de 19 de diciembre de 2007, 7ma Sesión Ordinaria, 15ta Asamblea Legislativa. Este informe recomendó presentar una resolución ordenando el estudio de la Ley Núm. 12, dentro del contexto de las prioridades gubernamentales actuales. Sabido es que un informe de una comisión, cuerpo legislativo o la legislatura en pleno, no tiene el efecto de revocar lo resuelto en los tribunales en una controversia particular. La acción legislativa no puede retrotraerse a pasadas controversias ni puede tener el efecto de revocar determinaciones de un tribunal en un caso en particular.

Por su parte, el Procurador General presentó un escrito de comparecencia ante el foro apelativo intermedio. Sostuvo que la parte peticionaria pretendía que se actuara en contra de la sentencia final y firme emitida en el 2005. Arguyó que el foro apelativo intermedio, además de desestimar la acción contra la mayoría de los codemandados, descartó todos los reclamos de la peticionaria.

El 24 de septiembre de 2009 el Tribunal de Apelaciones notificó una sentencia mediante la cual confirmó el dictamen emitido por el foro primario. Expresó el foro apelativo intermedio que el Tribunal de Primera Instancia procedió de forma correcta al desestimar la demanda, pues estaba obligado por la "ley del caso" que estableció la sentencia del 31 de marzo de 2005. Determinó el mencionado foro que la sentencia estableció que no era de aplicación la Ley Núm. 12, *supra*, al caso de autos. Por tanto, procedía desestimar con perjuicio y cerrar el caso. Además, sostuvo que las determinaciones realizadas por el Tribunal de Apelaciones en aquella ocasión constituían un impedimento para que fueran consideradas las controversias presentadas. La señora Rosso Descartes presentó una solicitud de reconsideración ante el Tribunal de Apelaciones, la cual fue declarada "no ha lugar" por dicho foro el 13 de agosto de 2008.

No conforme con la sentencia dictada, el 26 de octubre de 2009 la señora Rosso Descartes presentó un recurso de apelación ante nos. En su recurso nos solicitó que revoquemos la sentencia emitida por el Tribunal de

Apelaciones mediante la cual el mencionado foro confirmó la sentencia del foro primario que desestimó el caso. Señaló en este recurso que el Tribunal de Apelaciones había errado en su interpretación de la sentencia del 31 de marzo de 2005 y en desestimar la demanda. El 19 de marzo de 2010 emitimos una resolución mediante la cual acogimos el recurso de apelación presentado por la señora Rosso Descartes como uno de *certiorari* y lo denegamos.

Nuevamente inconforme, la señora Rosso Descartes presentó ante nos una moción de reconsideración. Señaló que no existía utilidad pública por lo que procedía que se le reconociera su derecho de adquisición preferente. El 30 de abril de 2010 reconsideramos y expedimos el auto solicitado.

Las partes presentaron sus respectivos alegatos. En su alegato, la señora Rosso Descartes expresó que procede la revocación de la sentencia emitida por el Tribunal de Primera Instancia, ya que la misma imparte finalidad a controversias que no han sido dirimidas de conformidad con el mandato que emitió el Tribunal de Apelaciones. Arguyó que si la sentencia del 31 de marzo de 2005 dispusiere de la totalidad del caso, no se hubiese devuelto al Tribunal de Primera Instancia. Señaló que el foro primario no resolvió los méritos de la causa. En su alegato, la señora Rosso Descartes, propuso que se establezcan unos parámetros para determinar que el fin público ha culminado, ya que alega que la legislación permite que el gobierno ignore de forma indefinida el reclamo de derecho preferente. Además,

arguyó que dado que la Cámara de Representantes determinó que el fin público había cesado, procede que este Tribunal se exprese.

La Administración de Terrenos, por su parte, presentó un alegato en el cual sostuvo que este Tribunal carece de jurisdicción para atender el recurso debido a que los asuntos ya fueron resueltos mediante sentencia y la misma advino final y firme. Señaló que la sentencia del Tribunal de Apelaciones es clara, que su dictamen no deja nada por resolver y que no procede cuestionar las transacciones realizadas. Arguyó que es doctrina conocida que una parte cuya propiedad ha sido adquirida mediante un procedimiento de expropiación forzosa y ha sido compensada, no puede cuestionar una expropiación luego mediante una acción colateral. Sostuvo que esta normativa veda la reclamación de la señora Rosso Descartes en su totalidad.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

II

El mandato es el medio oficial del que nos valemos los tribunales apelativos para comunicar a los tribunales de instancia la disposición que hemos hecho de la sentencia objeto de revisión. Colón Alicea y otros v. Frito Lay de Puerto Rico y otros, 2012 T.S.P.R. 115, 186 D.P.R. __ (2012); Mejías Montalvo v. Carrasquillo Martínez, 2012 T.S.P.R. 62, 185 D.P.R. __ (2012). El propósito principal del mandato es lograr que el foro inferior actúe de forma consistente. Mejías Montalvo v. Carrasquillo Martínez,

*supra*. El efecto del mandato alcanza incluso aquellas cuestiones que pudieron haberse litigado. Íd; Pan American v. Tribunal Superior, 97 D.P.R. 447, 451 (1969).

Así, recibido el mandato, lo resuelto por el tribunal apelativo constituye la ley del caso y el tribunal inferior debe limitarse a cumplir con lo ordenado. Mejías Montalvo v. Carrasquillo Martínez, *supra*; Estado v. Ocean Park Development Corp., 79 D.P.R. 158, 173 (1956). El foro primario debe circunscribirse a lo dispuesto por el foro apelativo, lo cual constituye la ley del caso entre las partes. Pueblo v. Tribunal de Distrito, 97 D.P.R. 241, 246 (1969).

La doctrina de la "ley del caso" es una manifestación necesaria del principio reconocido acerca de que las adjudicaciones deben tener fin. Srio. del Trabajo v. Tribunal Superior, 95 D.P.R. 136, 141 (1967). Es norma reiterada que los planteamientos que han sido objeto de adjudicación en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso. Según esta doctrina, generalmente las determinaciones y asuntos decididos y considerados por un tribunal, en particular por un foro apelativo, obligan tanto a un tribunal inferior como al que las dictó e impiden que puedan ser reexaminados. Estos asuntos y dictámenes gozan de finalidad y firmeza. Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 704 (1987); Secretario del Trabajo v. Tribunal Superior, 95 D.P.R. 136 (1967). Así, si no surge del récord que haya una variación de hechos del caso o en el estado de derecho que impera en

la situación en particular, una determinación emitida por un tribunal apelativo previamente no debe alterarse. La doctrina de la ley del caso tiene como propósito velar por el trámite ordenado y pronto de los litigios, al igual que promover la estabilidad y certeza del derecho. Torres Cruz v. Municipio de San Juan, 103 D.P.R. 217, 222 (1975).

III

Debemos determinar si el Tribunal de Apelaciones erró al confirmar el dictamen del Tribunal de Primera Instancia mediante el cual ese foro desestimó la demanda y ordenó el cierre definitivo del caso de epígrafe. Para contestar esta interrogante, es necesario examinar si la actuación del foro primario fue conforme a la sentencia emitida por el foro apelativo intermedio el 31 de marzo de 2005.

En su sentencia, el Tribunal de Apelaciones, determinó que la Ley Núm. 12, *supra*, no aplicaba al caso de autos y sostuvo que el fin público no había cesado. Además, expresó que la señora Rosso Descartes intentaba relitigar lo resuelto en E.L.A. v. Rosso, *supra*. Como precisáramos en los hechos anteriormente expuestos, el foro apelativo intermedio ordenó la continuación de los procedimientos conforme a lo determinado en su sentencia. Este dictamen se convirtió en final y firme.

Luego de celebrar una vista, el foro primario procedió a desestimar la demanda y ordenar el cierre definitivo del caso. Al observar las alegaciones de la demanda, concluimos que el Tribunal de Primera Instancia no erró en su proceder. La realidad es que no quedaban causas de acción

vigentes luego de las determinaciones que realizara el Tribunal de Apelaciones.

En la demanda, la señora Rosso Descartes, alegó que la expropiación fue ilegal. También arguyó que las transacciones post-expropiación eran ilegales y cuestionó el fin público detrás de éstas. Además, alegó poseer un derecho de readquisición preferente.

En síntesis, las reclamaciones giraban en torno a la ilegalidad de las transacciones, la aplicación de la Ley Núm. 12 y acerca del interés de adquisición preferente. El asunto de la inaplicabilidad de la Ley Núm. 12, *supra*, ya fue resuelto por el Tribunal de Apelaciones y dicha sentencia advino final y firme. En cuanto a los cuestionamientos acerca de las transacciones, el Tribunal de Apelaciones determinó que eran infundados. El foro apelativo intermedio determinó que, bajo las disposiciones de la Ley Núm. 12, *supra*, el fin público no había cesado.

Como vemos, estas controversias ya fueron dictaminadas por el Tribunal de Apelaciones, y de esta sentencia se recurrió ante nos y se denegó expedir. Por esta razón, la señora Rosso Descartes no puede cuestionar nuevamente esta determinación. La sentencia del Tribunal de Apelaciones del 31 de marzo de 2005 constituye la ley del caso.

La sentencia del foro apelativo intermedio contenía el mandato que el foro primario debía cumplir y que, en efecto, cumplió. Lo resuelto por el Tribunal de Apelaciones disponía de lo reclamado, solo correspondía dictar sentencia contra los otros demandados que quedaban en el

pleito. El Tribunal de Primera Instancia actuó según la instrucción de la sentencia del foro apelativo intermedio. De esta forma, el foro primario hizo lo que restaba, cerrar el caso acorde con lo dispuesto en el dictamen del Tribunal de Apelaciones.

La señora Rosso Descartes sostiene que erró el foro apelativo en su interpretación de la sentencia emitida por el mencionado foro en el 2005. La parte peticionaria pretende mantener vivo su caso bajo la teoría de que el foro apelativo intermedio en su sentencia solamente desestimó las causas de acción que surgen de la Ley Núm. 12, *supra*, y sugiere que hay causas de acción pendientes, por lo que el Tribunal de Primera Instancia erró en desestimar el caso. Sin embargo, es menester señalar que la señora Rosso Descartes no indica cuáles acciones quedaron pendientes luego del dictamen del Tribunal de Apelaciones. Tampoco presentó ante el foro apelativo intermedio los asuntos que alegadamente quedaron por dilucidar. En sus escritos no logra exponer qué causas de acción quedaron vigentes. Sus planteamientos giran en torno al derecho preferente de adquisición que arguye posee, cuya improcedencia ya se determinó y constituye un dictamen final y firme. La situación fáctica no ha cambiado. Además, nos solicitó que determinemos que el foro judicial puede decretar la finalidad de un fin público que la agencia no ha señalado. Este requerimiento está en contravención con la ley y el dictamen que interpreta la misma.

Por otra parte, el Tribunal de Apelaciones determinó que la demanda buscaba relitigar la sentencia emitida en 1963 por nuestro Tribunal. Señaló que este proceder constituía un ataque colateral, lo cual era una estrategia inadmisible luego de treinta y siete (37) años de dictada la sentencia. Luego de un examen detenido de la demanda enmendada, concidimos con el foro apelativo intermedio. Surge diáfanamente de las alegaciones de la peticionaria que lo que realmente busca es impugnar las transacciones realizadas. Al cuestionar las transacciones de post-expropiación, inevitablemente ataca el dictamen de este Tribunal en el citado caso de E.L.A. v. Rosso, *supra*.

IV

Por todo lo antes expuesto, se confirma la sentencia recurrida.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco disiente con opinión escrita. El Juez Asociado señor Martínez Torres no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Carmen T. Rosso Descartes t/c/c Carmen Rosso de Irizarry | | |
|---|---|---|
| Peticionaria | AC-2009-0087 | *Certiorari* |
| v. | | |
| Banco Gubernamental de Fomento | | |
| Recurridos | | |

Opinión disidente emitida por la Jueza Asociada señora PABÓN CHARNECO.

En San Juan, Puerto Rico, a 1 de noviembre de 2012.

I

A casi cincuenta (50) años de la expropiación de 337.7227 cuerdas de terreno pertenecientes a la Familia Rosso, uno de sus herederos, la Sra. Carmen T. Rosso (en adelante peticionaria) nuevamente acude ante nos.[5] Señala como error que se desestimara su Demanda y se ordenara el cierre definitivo y archivo del caso con consecuencia de cosa juzgada.

En la Demanda desestimada la peticionaria reclama, *inter alia*, el derecho preferente a readquirir el remanente de la propiedad expropiada tras el cese de su utilidad pública en conformidad con el Art. 2 de la Ley Núm. 12 de 10 de diciembre de 1975, según enmendada, 28 L.P.R.A. sec. 31a. Anima su solicitud la oferta de venta en pública subasta de estos terrenos por el titular actual, el Banco Gubernamental de Fomento.

---

[5] La "Familia Rosso" incluye a los demandados y apelados en el caso *E.L.A. v. Rosso*, 95 D.P.R. 501 (1967).

Hace cuarenta y cinco (45) años, en *E.L.A. v. Rosso*, 95 D.P.R. 501 (1967), determinamos, *inter alia*, que el Estado tenía derecho a retener el título de dominio sobre los bienes en controversia, así como, el derecho de la Familia Rosso a la justa compensación constitucional. Entonces, estabamos convencidos de la utilidad pública de la adquisición de esos bienes. Hoy, no pasamos juicio sobre dicho dictamen. Sin embargo, ha surgido una nueva controversia: si la desestimación del procedimiento bajo la Ley Núm. 12, *supra*, constituye cosa juzgada. Esta controversia ha quedado opacada, quizás, por las emociones que embargan a la peticionaria tras cincuenta (50) años de procedimientos judiciales y que no puede evitar transmitir a través de sus escritos.

En esencia, el foro primario desestimó con perjuicio la acción presentada bajo la Ley Núm. 12, *supra*, ante un dictamen previo que concluía que la ley no aplicaba al caso de autos por no cumplir con los criterios para adquirir el derecho preferente. Esta determinación fue confirmada por el Tribunal de Apelaciones al amparo de la doctrina de la ley del caso. **Hoy, este Tribunal confirma la Sentencia recurrida y por consiguiente, desestima la Demanda con perjuicio.** Disiento por considerar que el Tribunal no atiende la controversia ante nos, y por entender que la desestimación de la acción bajo la Ley Núm. 12, *supra*, no constituye cosa juzgada de surgir un cambio en las circunstancias que active el derecho preferente de readquisición.

**II**

El poder de expropiación del Estado es un atributo inherente a su soberanía y, por ende, de superior jerarquía a todos los derechos de propiedad. *ACT v. 780.6141m2*, 165 D.P.R. 121, 130 (2005). Este queda limitado constitucionalmente, pues "no se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II., Sec. 9, Const. Puerto Rico, L.P.R.A., Tomo 1. A su vez, el poder de expropiación lo ejerce la Asamblea Legislativa, ya sea directamente o delegándolo a otras entidades o funcionarios públicos. *Mun. de Guaynabo v. Adquisición M2*, 180 D.P.R. 206, 216 (2010). Cabe señalar que su ejercicio conlleva la extinción de todos los derechos anteriores sobre la propiedad. *ACT v. 780.6141m2*, supra.

Sin embargo, como parte de los poderes del Estado y aún ante la extinción de todo derecho anterior sobre la propiedad, la Asamblea Legislativa ha optado por instituir a favor de ciertos sujetos un derecho preferente a readquirir las propiedades del Estado. Para ello, la propiedad debe haber perdido su utilidad pública o que "aunque no h[a] dejado de ser de utilidad pública, no se est[á] utilizando actualmente y constituye una transacción beneficiosa para el Estado… la enajenación o arrendamiento de l[a] mism[a], según sea el caso". Exposición de Motivos, Ley Núm. 122 de 24 de diciembre de 1991, 1991 Leyes de Puerto Rico 979. Este derecho preferente ha sido plasmado en la Ley Núm. 12, *supra*.[6]

En extrema síntesis, la Ley Núm. 12, *supra*, establece un procedimiento para que el Estado, sus agencias, instrumentalidades o municipios enajenen bienes -expropiados

---

[6] la Ley Núm. 12 de 10 de diciembre de 1975, según enmendada, 28 L.P.R.A. sec. 31a.

o adquiridos de cualquier otra forma- que dejaren de ser de utilidad pública.[7] Ello sin la previa autorización de la Asamblea Legislativa de forma tal que se agilicen los trámites administrativos, se reduzcan los costos de mantenimiento de las propiedades y se aumenten los ingresos del erario. Sin embargo, la Asamblea Legislativa incorporó el derecho preferente de readquisición mencionado. En lo pertinente, el Art. 2 dispone que:

> Las personas naturales o sus herederos, así como las personas jurídicas, a quienes cualquier departamento, agencia, instrumentalidad del Estado Libre Asociado de Puerto Rico o municipio le hubiere expropiado o adquirido bienes en cualquier otra forma, tendrán derecho preferente a readquirir su propiedad cuando el titular de los mismos resolviese enajenar total o parcialmente los bienes así adquiridos que dejaren de ser de utilidad pública".[8] 28 L.P.R.A. sec. 31a. (Énfasis suplido).

No cabe duda de que la Asamblea Legislativa ha ejercido su prerrogativa con respecto a la enajenación de los bienes que ha adquirido el Estado, cualquier departamento, agencia, instrumentalidad o municipio. Para ello ha creado un procedimiento, ha delimitado el precio de venta y ha establecido un orden de preferencia de adquirentes. Tal es

---

[7] La Ley Núm. 12, *supra*, ha sido enmendada en varias ocasiones. Es de notar que la enmienda incorporada por la Ley Núm. 82 de 2 de julio de 1987, 1987 Leyes de Puerto Rico 314, extendió el uso de la Ley Núm. 12 de 10 de diciembre de 1975, para la administración y enajenación de propiedades estatales que dejaron de ser de utilidad pública, sin importar la forma en que fueron adquiridas y no solo aquellas adquiridas mediante expropiación forzosa.

[8] Otros requisitos pueden aplicar, tales como términos de ocupación. 28 L.P.R.A. sec. 31a. Además,

> "[e]l titular… en lo referente a las propiedades del Estado Libre Asociado de Puerto Rico lo es el Secretario del Departamento de Transportación y Obras Públicas. En cuanto a las demás propiedades el titular lo será el departamento, agencia, instrumentalidad del Estado Libre Asociado de Puerto Rico o municipio que ha adquirido la propiedad". 28 L.P.R.A. sec. 31d.

Por otro lado, la enmienda provista por la Ley Núm. 82 de 2 de julio de 1987, *supra*, busca proveer un mecanismo uniforme para la administración y enajenación de propiedades del Estado que han dejado de ser de utilidad pública, no importa la forma en que fueron adquiridas. Exposición de motivos, 1987 Leyes de Puerto Rico 314.

el caso, que ha reconocido un derecho preferente de readquisición.  No podemos ser indiferentes a la intención legislativa.

Es decir, cuando los elementos establecidos en la ley se configuran, surge el derecho preferente de readquisición. Se derrotaría el fin mismo de la ley si no se permite acudir a los tribunales cuando esto ocurra por existir una Sentencia previa que desestima con perjuicio la acción.[9]

Ciertamente, no hay razón para variar el dictamen de que la Ley Núm. 12, *supra*, no aplicaba al caso en atención a las circunstancias que examinó el tribunal en ese momento. Sin embargo, dado a que posteriormente pueden ocurrir cambios en las circunstancias que autoricen la aplicación de la Ley Núm. 12, *supra,* la acción no debe desestimarse con efecto de cosa juzgada.

Por los argumentos antes expresados, disiento respetuosamente de la Sentencia emitida por el Tribunal.


                         Mildred G. Pabón Charneco
                         Jueza Asociada

---

[9] La desestimación tiene el efecto de adjudicación en los méritos y por lo tanto, de cosa juzgada.  Regla 32.2(c) de las de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 43.1 (2001).