SENTENCIA
Nos corresponde resolver si erró el Tribunal de Apela-ciones al confirmar una sentencia del Tribunal de Primera Instancia, mediante la cual el foro primario desestimó la demanda y ordenó el cierre definitivo del caso de epígrafe. Por entender que el foro primario actuó conforme al dicta-men del Tribunal de Apelaciones, confirmamos la senten-cia recurrida.
I
El caso ante nuestra consideración tiene su génesis en la expropiación de la Finca Rosso realizada por el gobierno de Puerto Rico el 5 de diciembre de 1963. Esta expropia-ción fue objeto de revisión y fue autorizada en el caso E.L.A. v. Rosso, 95 D.P.R. 501 (1967), donde este Tribunal *186 declaró constitucional la Ley de la Administración de Terrenos de Puerto Rico, Ley Núm. 13 de 16 de mayo de 1962 (23 L.P.R.A. sec. 311 et seq.). Luego de 33 años de emitida la decisión de este Tribunal en E.L.A. v. Rosso, supra, la señora Rosso Descartes presentó una demanda de senten-cia declaratoria y otros remedios el 31 de octubre de 2000, enmendada el 10 de diciembre de 2003.(1)
En su demanda, la señora Rosso Descartes cuestionó la expropiación y alegó que ésta fue ilegal. De igual forma, cuestionó la legalidad de las transacciones posexpropiación y señaló que los terrenos fueron ilegalmente vendidos a terceros. Alegó que los demandados, sin mediar interés pú-blico o social, enajenaron ilegalmente las parcelas expro-piadas a favor de empresas privadas con fines de lucro. En específico, impugnó la oferta de venta en pública subasta realizada por el Banco Gubernamental de Fomento (BGF) sobre una parcela segregada de la Finca Rosso. De igual forma, atacó la validez de otras transacciones similares con relación a las parcelas segregadas de la Finca Rosso. Ade-más, argüyó que se le ha privado de su derecho legal sobre la finca expropiada y reclamó un derecho de adquisición preferente sobre el remanente de la Finca Rosso por haber cesado el fin público.
El Tribunal de Primera Instancia dictó sentencias par-ciales mediante las cuales desestimó la demanda contra algunos de los codemandados, entre éstos el Departamento de Vivienda, el Departamento de Transportación y Obras Públicas, la Administración de Reglamentos y Permisos y *187 la Comisión para el desarrollo de Río Piedras.(2) Por otra parte, el foro primario notificó una resolución mediante la cual declaró “no ha lugar” una solicitud de sentencia suma-ria parcial presentada por el BGF. Fundamentó su dicta-men en que había controversia en cuanto a si el remanente de la Finca Rosso, cuya posesión ostenta el BGF, carecía de utilidad pública al momento de la publicación del aviso de subasta.(3) De igual forma, declaró “no ha lugar” la deses-timación de la demanda contra el Jardín de Río Piedras, Inc., la Administración de Terrenos y el Municipio de Bayamón.
El 31 de marzo de 2005 el Tribunal de Apelaciones emi-tió una sentencia, notificada el 13 de abril de 2005, me-diante la cual consolidó cuatro recursos de certiorari. Luego de exponer los planteamientos de las partes, el tribunal determinó que la Ley de Venta de Propiedades Pú-blicas, Ley Núm. 12 de 10 diciembre de 1975 (28 L.P.R.A. sec. 31 et seq.), no aplicaba al caso, por lo que procedía desestimar las causas de acción al amparo de esta legisla-ción contra las partes peticionarias. Determinó que el fin público no había cesado. Sostuvo que éste consistía en que la agencia pueda cumplir con los fines dispuestos en su ley orgánica y que la propiedad en disputa pueda desarrollarse de forma organizada e integrada. Además, expresó que la señora Rosso Descartes intentaba impugnar las transac-ciones realizadas por las agencias gubernamentales encar-gadas de implantar la política pública a raíz de la determi-nación de 1967. El foro apelativo intermedio sostuvo que el efecto de la demanda era tratar de relitigar lo resuelto. El Tribunal de Apelaciones estableció que las causas de acción *188 no eran independientes y que, por el contrario, requerían cuestionar el dictamen de E.L.A. v. Rosso, supra.
El foro apelativo intermedio desestimó la demanda en-mendada presentada por la señora Rosso Descartes contra el Departamento de la Vivienda, el Departamento de Transportación y Obras Públicas, la Administración de Re-glamentos y Permisos y la Comisión para el Desarrollo del Río Bayamón, por carecer de personalidad jurídica para ser demandadas. En cuanto a los otros tres recursos, re-vocó las resoluciones recurridas y desestimó la demanda al amparo de las disposiciones de la Ley Núm. 12 contra el Estado Libre Asociado, la Administración de Terrenos, el BGF y el Municipio de Bayamón. El Tribunal de Apelacio-nes ordenó al Tribunal de Primera Instancia que conti-nuara con los procedimientos de forma compatible con los pronunciamientos hechos en la sentencia dictada.
Inconforme, la señora Rosso Descartes presentó un re-curso de certiorari ante nos. El 26 de agosto de 2005, noti-ficada el día 30, emitimos una resolución mediante la cual declaramos “no ha lugar” la solicitud presentada por la se-ñora Rosso Descartes. De igual forma, el 2 de octubre de 2006 el Tribunal Supremo de Estados Unidos denegó un recurso de certiorari presentado. Por tal razón, la senten-cia del foro apelativo intermedio advino final y firme.
Así las cosas, el 18 de diciembre de 2007 el Tribunal de Primera Instancia emitió una resolución en la cual expresó que el Tribunal de Apelaciones había desestimado la de-manda contra algunos de los codemandados. Además, ex-presó que lo decidido por el Tribunal de Apelaciones dispo-nía de lo reclamado. Sostuvo el foro de instancia que para poder cerrar el caso procedía desestimar la demanda contra los otros codemandados que quedaban en el pleito.
El BGF presentó una moción para que se dejara sin efecto una vista que estaba pautada para cerrar el caso. Sostuvo que el pleito ya había sido adjudicado. La señora Rosso Descartes presentó una moción ante el Tribunal de *189 Primera Instancia en la cual se opuso a la cancelación de la vista pautada. Basó su petición en que las circunstancias que dieron lugar a esa determinación habían cambiado. Como motivo de cambio de circunstancias> señaló la emi-sión de un Informe Final realizado por la Comisión de Go-bierno, ordenado por la R. de la C. 6667 de 1 de mayo de 2007, 5ta Sección Ordinaria, 15ta Asamblea Legislativa.(4) Posteriormente informó acerca de la aprobación del Informe. Argüyó que éste tuvo el efecto de activar la con-troversia sobre derecho preferente de readquisición del re-manente de la Finca Rosso en cuanto al BGF y otras agencias. El Tribunal de Primera Instancia, luego de cele-brar vista para que la parte demandante argumentara por qué no se debía ordenar el cierre definitivo del caso, ex-presó que el informe presentado no revocaba la sentencia del Tribunal de Apelaciones la cual era final y firme. En consecuencia, el 27 de febrero de 2008 notificó una senten-cia mediante la cual desestimó la demanda con perjuicio y ordenó el cierre definitivo del caso.
Inconforme con esta determinación, el 28 de abril de 2008 la señora Rosso Descartes presentó un recurso de apelación ante el Tribunal de Apelaciones. Señaló que el foro primario había interpretado erróneamente la senten-cia del 31 de marzo de 2005 del Tribunal de Apelaciones.
Por su parte, el Procurador General presentó un escrito de comparecencia ante el foro apelativo intermedio. Sos-tuvo que la parte peticionaria pretendía que se actuara en contra de la sentencia final y firme emitida en el 2005. Argüyó que el foro apelativo intermedio, además de deses- *190 timar la acción contra la mayoría de los codemandados, descartó todos los reclamos de la peticionaria.
El 24 de septiembre de 2009 el Tribunal de Apelaciones notificó una sentencia mediante la cual confirmó el dicta-men emitido por el foro primario. Expresó el foro apelativo intermedio que el Tribunal de Primera Instancia procedió de forma correcta al desestimar la demanda, pues estaba obligado por la “ley del caso” que estableció la sentencia del 31 de marzo de 2005. Determinó el mencionado foro que la sentencia estableció que no era de aplicación la Ley Núm. 12 al caso de autos. Por lo tanto, procedía desestimar con perjuicio y cerrar el caso. Además, sostuvo que las deter-minaciones realizadas por el Tribunal de Apelaciones en aquella ocasión constituían un impedimento para que fue-ran consideradas las controversias presentadas. La señora Rosso Descartes presentó una solicitud de reconsideración ante el Tribunal de Apelaciones, la cual fue declarada “no ha lugar” por dicho foro el 13 de agosto de 2008.
No conforme con la sentencia dictada, el 26 de octubre de 2009 la señora Rosso Descartes presentó un recurso de apelación ante nos. En su recurso nos solicitó que revoque-mos la sentencia emitida por el Tribunal de Apelaciones mediante la cual confirmó la sentencia del foro primario que desestimó el caso. Señaló en este recurso que el Tribunal de Apelaciones había errado en su interpretación de la sentencia del 31 de marzo de 2005 y en desestimar la demanda. El 19 de marzo de 2010 emitimos una resolución mediante la cual acogimos el recurso de apelación presen-tado por la señora Rosso Descartes como uno de certiorari y lo denegamos.
Nuevamente inconforme, la señora Rosso Descartes pre-sentó ante nos una moción de reconsideración. Señaló que no existía utilidad pública por lo que procedía que se le reconociera su derecho de adquisición preferente. El 30 de abril de 2010 reconsideramos y expedimos el auto solicitado.
*191 Las partes presentaron sus respectivos alegatos. En su alegato, la señora Rosso Descartes expresó que procede la revocación de la sentencia emitida por el Tribunal de Pri-mera Instancia, ya que la misma imparte finalidad a con-troversias que no han sido dirimidas en conformidad con el mandato que emitió el Tribunal de Apelaciones. Argüyó que si la sentencia del 31 de marzo de 2005 dispusiere de la totalidad del caso, no se hubiese devuelto al Tribunal de Primera Instancia. Señaló que el foro primario no resolvió los méritos de la causa. En su alegato, la señora Rosso Descartes, propuso que se establezcan unos parámetros para determinar que el fin público ha culminado, ya que alega que la legislación permite que el gobierno ignore de forma indefinida el reclamo de derecho preferente. Ade-más, argüyó que dado que la Cámara de Representantes determinó que el fin público había cesado, procede que este Tribunal se exprese.
La Administración de Terrenos, por su parte, presentó un alegato en el cual sostuvo que este Tribunal carece de jurisdicción para atender el recurso debido a que los asun-tos ya fueron resueltos mediante sentencia y la misma ad-vino final y firme. Señaló que la sentencia del Tribunal de Apelaciones es clara, que su dictamen no deja nada por resolver y que no procede cuestionar las transacciones realizadas. Argüyó que es doctrina conocida que una parte cuya propiedad ha sido adquirida mediante un procedi-miento de expropiación forzosa y ha sido compensada, no puede cuestionar una expropiación luego mediante una ac-ción colateral. Sostuvo que esta normativa veda la recla-mación de la señora Rosso Descartes en su totalidad.
Con el beneficio de la comparecencia de las partes, pro-cedemos a resolver.
II
El mandato es el medio oficial del que nos valemos los *192 tribunales apelativos para comunicar a los tribunales de instancia la disposición que hemos hecho de la sentencia objeto de revisión. Colón y otros v. Frito Lay, 186 D.P.R. 135 (2012); Mejias et al. v. Carrasquillo et al., 185 D.P.R. 288 (2012). El propósito principal del mandato es lograr que el foro inferior actúe de forma coherente. Mejias et al. v. Carrasquillo et al., supra. El efecto del mandato alcanza incluso aquellas cuestiones que pudieron haberse litigado. Id.; Pan American v. Tribunal Superior, 97 D.P.R. 447, 451 (1969).
Así, recibido el mandato, lo resuelto por el tribunal ape-lativo constituye la ley del caso y el tribunal inferior debe limitarse a cumplir con lo ordenado. Mejias et al. v. Carrasquillo et al., supra; Estado v. Ocean Park Development Corp., 79 D.P.R. 158, 173 (1956). El foro primario debe cir-cunscribirse a lo dispuesto por el foro apelativo, lo cual constituye la ley del caso entre las partes. Pueblo v. Tribunal de Distrito, 97 D.P.R. 241, 246 (1969).
La doctrina de la “ley del caso” es una manifestación necesaria del principio reconocido acerca de que las adju-dicaciones deben tener fin. Srio. del Trabajo v. Tribunal Superior, 95 D.P.R. 136, 141 (1967). Es norma reiterada que los planteamientos que han sido objeto de adjudicación en el ámbito judicial, mediante dictamen firme, constitu-yen la ley del caso. Según esta doctrina, generalmente las determinaciones y asuntos decididos y considerados por un tribunal, en particular por un foro apelativo, obligan tanto a un tribunal inferior como al que las dictó e impiden que puedan ser reexaminados. Estos asuntos y dictámenes go-zan de finalidad y firmeza. Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 704 (1987); Srio. del Trabajo v. Tribunal Superior, supra. Así, si no surge del expediente que haya una variación de hechos del caso o en el estado de derecho que impera en la situación en particular, una de-terminación emitida por un tribunal apelativo previa- *193 mente no debe alterarse. La doctrina de la ley del caso tiene como propósito velar por el trámite ordenado y pronto de los litigios, al igual que promover la estabilidad y certeza del derecho. Torres Cruz v. Municipio de San Juan, 103 D.P.R. 217, 222 (1975).
III
Debemos determinar si el Tribunal de Apelaciones erró al confirmar el dictamen del Tribunal de Primera Instan-cia mediante el cual ese foro desestimó la demanda y or-denó el cierre definitivo del caso de epígrafe. Para contes-tar esta interrogante, es necesario examinar si la actuación del foro primario fue conforme a la sentencia del foro apelativo intermedio de 31 de marzo de 2005.
En su sentencia, el Tribunal de Apelaciones determinó que la Ley Núm. 12 no aplicaba al caso de autos y sostuvo que el fin público no había cesado. Además, expresó que la señora Rosso Descartes intentaba relitigar lo resuelto en E.L.A. v. Rosso, supra. Como precisáramos en los hechos anteriormente expuestos, el foro apelativo intermedio or-denó la continuación de los procedimientos conforme a lo determinado en su sentencia. Este dictamen se convirtió en final y firme.
Luego de celebrar una vista, el foro primario procedió a desestimar la demanda y ordenar el cierre definitivo del caso. Al observar las alegaciones de la demanda, conclui-mos que el Tribunal de Primera Instancia no erró en su proceder. La realidad es que no quedaban causas de acción vigentes luego de las determinaciones que realizara el Tribunal de Apelaciones.
En la demanda, la señora Rosso Descartes, alegó que la expropiación fue ilegal. También argüyó que las transac-ciones posexpropiación eran ilegales y cuestionó el fin pú-blico detrás de éstas. Además, alegó poseer un derecho de readquisición preferente.
*194 En síntesis, las reclamaciones giraban en torno a la ile-galidad de las transacciones, la aplicación de la Ley Núm. 12 y acerca del interés de adquisición preferente. El asunto de la inaplicabilidad de la Ley Núm. 12 ya fue resuelto por el Tribunal de Apelaciones y dicha sentencia advino final y firme. En cuanto a los cuestionamientos acerca de las tran-sacciones, el Tribunal de Apelaciones determinó que eran infundados. El foro apelativo intermedio determinó que, según las disposiciones de la Ley Núm. 12, el fin público no había cesado.
Como vemos, estas controversias ya fueron dictamina-das por el Tribunal de Apelaciones, y de esta sentencia se recurrió ante nos y se denegó expedir. Por esta razón, la señora Rosso Descartes no puede cuestionar nuevamente esta determinación. La sentencia del Tribunal de Apelacio-nes del 31 de marzo de 2005 constituye la ley del caso.
La sentencia del foro apelativo intermedio contenía el mandato que el foro primario debía cumplir y que, en efecto, cumplió. Lo resuelto por el Tribunal de Apelaciones disponía de lo reclamado; solo correspondía dictar senten-cia contra los otros demandados que quedaban en el pleito. El Tribunal de Primera Instancia actuó según la instruc-ción de la sentencia del foro apelativo intermedio. De esta forma, el foro primario hizo lo que restaba, cerrar el caso acorde con lo dispuesto en el dictamen del Tribunal de Apelaciones.
La señora Rosso Descartes sostiene que erró el foro ape-lativo en su interpretación de la sentencia emitida por el mencionado foro en el 2005. La parte peticionaria pretende mantener vivo su caso al amparo de la teoría de que el foro apelativo intermedio en su sentencia solamente desestimó las causas de acción que surgen de la Ley Núm. 12, y su-giere que hay causas de acción pendientes, por lo que el Tribunal de Primera Instancia erró en desestimar el caso. Sin embargo, es menester señalar que la señora Rosso Descartes no indica cuáles acciones quedaron pendientes luego *195 del dictamen del Tribunal de Apelaciones. Tampoco pre-sentó ante el foro apelativo intermedio los asuntos que pre-suntamente quedaron por dilucidar. En sus escritos no logra exponer qué causas de acción quedaron vigentes. Sus planteamientos giran en torno al derecho preferente de ad-quisición que arguye posee, cuya improcedencia ya se de-terminó y constituye un dictamen final y firme. La situa-ción fáctica no ha cambiado. Además, nos solicitó que determinemos que el foro judicial puede decretar la finali-dad de un fin público que la agencia no ha señalado. Este requerimiento está en contravención con la ley y el dicta-men que la interpreta.
Por otra parte, el Tribunal de Apelaciones determinó que la demanda buscaba relitigar la sentencia emitida en 1963 por nuestro Tribunal. Señaló que este proceder cons-tituía un ataque colateral, lo cual era una estrategia inad-misible luego de 37 años de dictada la sentencia. Luego de un examen detenido de la demanda enmendada, coincidi-mos con el foro apelativo intermedio. Surge diáfanamente de las alegaciones de la peticionaria que lo que realmente busca es impugnar las transacciones realizadas. Al cuestio-nar las transacciones de posexpropiación, inevitablemente ataca el dictamen de este Tribunal en el citado caso de E.L.A. v. Rosso, supra.
IV
Por todo lo antes expuesto, se confirma la sentencia recurrida.
Así lo pronunció, manda el Tribunal y certifica la Secre-taria del Tribunal Supremo. La Jueza Asociada Señora Pa-bón Charneco disintió con una opinión escrita. El Juez Aso-ciado Señor Martínez Torres no interviene.
(Fdo.) Aida Ileana Oquendo Graulau Secretaria del Tribunal Supremo
*196 — fl-

 En la demanda fueron incluidos como demandados el Banco Gubernamental de Fomento para Puerto Rico (BGF), la Administración de Terrenos, el Estado Libre Asociado de Puerto Rico, el Departamento de Transportación y Obras Públicas, el Departamento de Vivienda, la Junta de Planificación, la Administración de Regla-mentos y Permisos, el Departamento de Vivienda, el Municipio de Bayamón, la Co-misión para el Desarrollo del Río Bayamón, y otros demandados de nombres conoci-dos y desconocidos. Entre estos demandados figuraban funcionarios guberna-mentales, contratistas, desarrolladores y socios en su capacidad individual, bufete de abogados, abogados y notarios.

 El 27 de enero de 2005 el Tribunal de Primera Instancia notificó dos senten-cias parciales mediante las cuales desestimó con perjuicio la demanda contra los codemandados Shabas, S.E., Shabas Corporation & D.J.S. Construction Corporation, Third Development, Inc. y Mora Development.

 Resolución del Tribunal de Primera Instancia de 18 de enero de 2005, Apéndice, pág. 161.

 Informe Final de la Comisión de Gobierno de 19 de diciembre de 2007, 7ma Sesión Ordinaria, 15ta Asamblea Legislativa. Este informe recomendó presentar una resolución ordenando el estudio de la Ley Núm. 12 dentro del contexto de las priori-dades gubernamentales actuales. Sabido es que un informe de una comisión, cuerpo legislativo o la legislatura en pleno, no tiene el efecto de revocar lo resuelto en los tribunales en una controversia particular. La acción legislativa no puede retro-traerse a pasadas controversias ni puede tener el efecto de revocar determinaciones de untribunal en un caso en particular.