ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **RAFAEL OTAÑO CASANOVA** <br><br> Apelado <br><br> v. <br><br> **CONSEJO DE TITULARES CONDOMINIO PUERTO PASEOS,** *et al* <br><br> Apelante | KLAN202400974 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan** <br><br> Civil Núm.: SJ2022CV04896 <br><br> Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de marzo de 2025.

Comparece ante nos Chubb Insurance Company of Puerto Rico (Chubb o apelante) y nos solicita que revisemos y revoquemos la *Sentencia Parcial* emitida el 1 de agosto de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante la misma, el foro de instancia declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por el señor Rafael Otaño Casanova (señor Otaño Casanova o apelado).

Por las razones que expondremos a continuación, se confirma la sentencia apelada.

**I.**

Según surge del expediente, desde el 29 de noviembre de 2004, el señor Otaño Casanova es dueño del apartamento 203 del Condominio Puerto Paseos en San Juan. En o cerca del 15 de abril de 2017, ocurrió una inundación de aguas negras en esta propiedad. El señor Otaño Casanova reportó el incidente al Consejo de Titulares del Condominio (Consejo de Titulares).

El 24 de abril de 2017, el plomero Luis Payano de Payano Plumbing, Corp. (Payano o Payano Plumbing), contratado por el Consejo de Titulares, visitó, inspeccionó y realizó pruebas en la referida propiedad. Tras la inspección, Payano preparó un *Informe/Estimado*, en el cual precisó el trabajo preliminar realizado en la propiedad. Especificó la labor de desmonte del desagüe del lavamanos y la inspección con cámaras de la tubería. En este informe, Payano especificó lo siguiente:

> Se procedió a realizar [el] destape, luego de dos intentos la tubería dej[ó] de desbordarse y[,] al realizar la inspección con cámara[,] se pudo observar lo que aparenta ser una pieza rota en el área del lobby donde hace el cambio de dirección de vertical a horizontal. Según los planos del condominio[,] esta tubería que recoge los lavamanos es un bajante de 3" vertical hasta el lobby.

Entonces, Payano recomendó:

> Preparar y proteger el área del lobby para poder picar [el] piso de mármol [de] aproximadamente 3'x3'x3' para poder realizar [una] excavación y reparar [la] tubería y pieza. Además, cuando se corte la tubería[,] se podrá verificar la misma, si tuviera algún problema adicional hasta el alcantarillado fuera del condominio, y aquel durante la inspección de cámara, la misma no pasó de pieza q[ue] aparenta estar rota, por ende, no sabemos si hay algún problema más adelante.

El 8 de mayo de 2017, Payano le remitió una factura al Condominio Puerto Paseos mediante la cual detalló la labor ejecutada en el área del vestíbulo:

> Preparar y proteger el área del lobby para poder picar [el] piso de mármol de aproximadamente 3'x3'x3' para poder realizar [una] excavación, reparar tubería y pieza la cual se encontró que estaba saturada completamente de cemento y debido a esto no fluían las aguas sanitarias correctamente. Esto pudo haber causado el desbordamiento del apartamento 203[,] ya que la pieza que se sac[ó] es la que recogía específicamente esa línea de lavamanos de los pisos 2 y 3. Se instaló la pieza nueva y se empalm[ó] con uniones mecánicas de goma y se tapó la excavación. Se botaron los escombros y se selló con cemento todo lo que se picó.

El señor Otaño Casanova presentó una reclamación a Chubb, aseguradora del Consejo de Titulares con póliza vigente desde el 30 de noviembre de 2016 hasta el 30 de noviembre de 2017, por los

daños sufridos en su propiedad en la inundación del 15 de abril de 2017. Chubb procedió con una investigación sobre el siniestro a través de una compañía de ajustadores independientes llamada Continental Claims Services, Inc. (Continental Claims). El 10 de mayo de 2017, el señor Otaño Casanova le envió un correo electrónico al señor Ángel Montes, ajustador de Continental Claims, con la lista de los daños sufridos por la inundación. En esta comunicación, el señor Otaño Casanova señaló que el evento fue provocado por unas tuberías rotas en las áreas comunes del edificio.

El 23 de junio de 2017, Chubb, a través del ajustador independiente mencionado, le comunicó al señor Otaño Casanova que, de la investigación llevada a cabo, no se encontró que el Condominio Puerto Paseos tuviera responsabilidad legal por los daños sufridos a causa de la inundación. Así, Chubb extendió una oferta de transacción al señor Otaño Casanova por la suma de $3,500.00 y le envió una *Carta de Pago y Relevo*. El señor Otaño Casanova aceptó la oferta y firmó la carta el 26 de junio de 2017; el pago fue depositado en su cuenta bancaria.

El 4 de junio de 2021, mientras el señor Otaño Casanova tramitaba una reclamación por otra inundación ocurrida en su apartamento, se enteró de la existencia del *Informe/Estimado* preparado por Payano Plumbing con fecha del 24 de abril de 2017; este también ignoraba la existencia de la factura emitida por Payano el 8 de mayo de 2017. Ante ello, presentó una demanda sobre daños y perjuicios contra el Consejo de Titulares y Chubb. En esta, alegó que el *Informe/Estimado* preparado por Payano Plumbing que le atribuía la responsabilidad de la inundación concernida al Condominio se le ocultó, lo cual le indujo a aceptar una compensación inferior por los daños objeto de la reclamación. Arguyó que en la referida transacción con Chubb medió dolo que causó la nulidad de la *Carta de Pago y Relevo*. Chubb contestó la

demanda, negando lo planteado sobre la nulidad del contrato de transacción por dolo.

Tras varios trámites, el 5 de abril de 2024, Chubb presentó una *Solicitud de Sentencia Sumaria Parcial en Torno a Causa de Acción por Dolo*. En esencia, adujo que no existía evidencia que sugiriera la nulidad de la *Carta de Pago y Relevo* y que la prueba sí sostuvo que el señor Otaño Casanova la aceptó y firmó voluntariamente con pleno conocimiento de sus efectos. Enumeró 18 hechos relevantes sobre los cuales entendía que no existía controversia. A tales efectos, esbozó que no se justificaba continuar litigando la causa de acción relacionada a los daños sufridos en el apartamento del señor Otaño Casanova por la inundación ocurrida en el 2017.[1]

El 30 de abril de 2024, el señor Otaño Casanova instó una *Oposición a "Solicitud de Sentencia Sumaria Parcial en Torno a Causa de Acción por Dolo" y Solicitud de Sentencia Sumaria del Demandante en Cuanto a Dicha Causa de Acción*. A grandes rasgos, razonó que tanto Chubb como el Consejo de Titulares del Condominio omitieron entregarle una admisión determinante (que es el *Informe Estimado del Perito del Consejo)* antes de que aceptara lo ofrecido y suscribiera la *Carta de Pago y Relevo*. Argumentó que su consentimiento estuvo viciado y fue inválido, por lo que tenía derecho a que se le compensaran los daños inicialmente reclamados, más todos los realmente sufridos con motivo de la primera inundación y la omisión de mala fe de proveerle la admisión del Consejo de Titulares, a través del perito que dicha entidad contrató.[2]

---

[1] Junto a su solicitud incluyó 11 anejos: póliza certificada, informe estimado, factura, designación Continental Claims, correo electrónico, oferta transaccional, transcripción de la deposición tomada el 29 de junio de 2023, aceptación de oferta, carta de pago y relevo, carta del 13 de noviembre de 2020 y transcripción de la deposición tomada el 20 de julio de 2023. Apéndice del recurso, págs. 40-513.

[2] Apéndice del recurso, págs. 518-526. No surgen del expediente anejos a esta moción.

Así las cosas, el 1 de agosto de 2024, el TPI dictó la *Sentencia Parcial* que hoy revisamos, por medio de la cual denegó la solicitud de sentencia sumaria incoada por Chubb y acogió la solicitud de sentencia sumaria del señor Otaño Casanova. En su dictamen, el foro de instancia realizó las siguientes determinaciones de hechos:[3]

1. Otaño Casanova es titular del apartamento 203, en el Condominio Puerto Paseos, en San Juan, desde el 29 de noviembre de 2004.

2. Chubb Insurance expidió la póliza de seguro número 08-95PR-00700369-0, a favor del Consejo de Titulares, para el período del 30 de noviembre de 2016 hasta el 30 de noviembre de 2017.

3. En o cerca del 15 de abril de 2017 ocurrió una inundación de aguas negras en el apartamento de Otaño Casanova.

4. El 24 de abril de 2017, el plomero Payano de Payano Plumbing visitó, inspeccionó e hizo pruebas en la propiedad de Otaño Casanova.

5. A raíz de ello, el 24 de abril de 2017, Payano Plumbing rindió el Informe/Estimado.

6. Según el Informe/Estimado de Payano Plumbing Corp., Luis Payano desmontó el desagüe del lavamanos de Otaño Casanova y realizó una inspección con cámara. Este específicamente dispone que:

   Se procedió a realizar destape, luego de dos intentos la tubería dejo de desbordarse y al realizar inspección con cámara se pudo observar lo que aparenta ser una pieza rota en el área del lobby donde hace el cambio de dirección de vertical a horizontal. Según los planos del condominio esta tubería que recoge los lavamanos es un bajante de 3" vertical hasta el lobby.

7. Según el Informe/Estimado de Payano Plumbing Corp., se recomendó:

   Preparar y proteger el área del lobby para poder picar piso de mármol aproximadamente 3'x3'x3' para poder realizar excavación y reparar tubería y pieza. Además, cuando se corte la tubería se podrá verificar la misma, si tuviera algún problema adicional hasta el alcantarillado fuera del condominio, y aquel durante la inspección de cámara, la misma no pasó de pieza q aparenta estar rota, por ende, no sabemos si hay algún problema más adelante.

---

[3] Notas al calce omitidas.

8. El 8 de mayo de 2017, Payano Plumbing remitió la Factura al Condominio Puerto Paseos, en la cual dispuso específicamente que:

> Preparar y proteger el área del lobby para poder picar piso de mármol de aproximadamente 3'x3'x3' para poder realizar excavación, reparar tubería y pieza la cual se encontró que estaba saturada completamente de cemento y debido a esto no fluían las aguas sanitarias correctamente. Esto pudo haber causado el desbordamiento del apartamento 203 ya que la pieza que se saco es la que recogía específicamente esa línea de lavamanos de los pisos 2 y 3. Se instaló la pieza nueva y se empalmo con uniones mecánicas de goma y se tapó la excavación. Se botaron los escombros y se selló con cemento todo lo que se picó.

9. Otaño Casanova presentó una reclamación a Chubb Insurance por los daños que sufrió su propiedad producto de la inundación del 15 [de] abril de 2017.

10. Chubb Insurance designó la investigación de los hechos a la firma de ajustadores independientes Continental Claims Services, Inc. ("Continental Claims").

11. El 10 de mayo de 2017, Otaño Casanova envió a (sin) un correo electrónico al Sr. Ángel Montes, ajustador independiente de Continental Claims, con la lista de la propiedad "total o significativamente" afectada por el evento de aguas negras en su apartamento "por rotura de plomería en áreas comunes del edificio Condominio Puerto Paseos".

12. El viernes, 23 de junio de 2017, Chubb Insurance, a través del Sr. Ángel Montes, envió una carta a la parte demandante, mediante la cual informó que al concluir el proceso de investigación no encontró responsabilidad legal por los daños por parte del Condominio Puerto Paseos y extendió una oferta de transacción por la suma de $3,500.00.

13. El 23 de junio de 2017, Chubb Insurance, a través del Sr. Ángel Montes, también envió a la parte demandante una Carta de Pago y Relevo.

14. El 26 de junio de 2017, Otaño Casanova aceptó la oferta por $3,500.00 y firmó la Carta de Pago y Relevo.

15. Otaño Casanova recibió el pago de $3,500.00 y lo depositó en su cuenta.

16. Otaño Casanova posee un bachillerato en Contabilidad de la Universidad de Universidad (sin) de Marquette en Milwaukee, Wisconsin.

17. Otaño Casanova es Contador Público Autorizado ("CPA").

18. Otaño Casanova es árbitro de la Financial Indusrty (sin) Regulatory Authority, Inc. ("FINRA") y mantiene una licencia de asesor financiero.

19. El 4 de junio de 2021, Otaño Casanova recibió, por primera vez, el Informe/Estimado de Payano Plumbing con fecha del 24 de abril de 2017.

El Tribunal concluyó que el *Informe/Estimado* de Payano Plumbing, recibido por el señor Otaño Casanova el 4 de junio de 2021, expuso que el problema de inundación del apartamento aparentaba ser una pieza rota en el área del lobby del Condominio. Concluyó que no existía duda sobre que lo informado por Chubb Insurance como aseguradora del Consejo de Titulares contradecía totalmente el *Informe/Estimado* que llevó a cabo Payano Plumbing, al este último informar que el problema se trataba de las tuberías comunales. Precisó, además, que, aun tomando en consideración la preparación académica, condición socioeconómica y el tipo de trabajo del señor Otaño Casanova, ello no lo equivalía a que tuviera una posición de perito plomero que lo llevara a inferir que la determinación de no responsabilidad del Consejo de Titulares por conducto de Chubb estuvo errada, o, al menos, fuera contradictoria al *Informe/Estimado*. A su vez, razonó que dicha información hubiera sido determinante para prestar un consentimiento libre y voluntario. Por ende, estableció que hubo vicio en el consentimiento, mediando dolo y declaró nula la *Carta de Pago y Relevo.*

Inconforme con esta determinación, Chubb presentó una *Moción de Reconsideración de Sentencia Parcial* el 16 de agosto de 2024. En esta, planteó que la prueba era insuficiente para concluir que hubo dolo por parte de Chubb o el Consejo de Titulares. Para sustentarla, incluyó un informe de investigación realizado el 2 de junio de 2017 por Continental Claims. El señor Otaño Casanova se opuso a la solicitud de reconsideración el 3 de septiembre de 2024,

puntualizando que, al momento de firmar la *Carta de Pago y Relevo*, ni conocía sobre la existencia del *Informe/Estimado* y la factura emitida por Payano, ni del informe de investigación preparado por Continental Claims. El TPI declaró *No Ha Lugar* el petitorio de Chubb en una *Resolución* dictada el 1 de octubre de 2024.

Aun en desacuerdo, Chubb recurre ante este Foro y alega que:

El TPI erró en la apreciación de la prueba documental que obra en los autos y concluir que hubo vicio en el consentimiento mediante dolo.

El TPI erró al declarar nulo el contrato de transacción extrajudicial o Carta de Pago y Relevo del 26 de junio de 2017, a pesar de [que] la prueba en autos demuestra que fue válidamente otorgado entre las partes.

El 6 de diciembre de 2024, el señor Otaño Casanova presentó su alegato. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Los contratos son una fuente de las obligaciones en nuestro ordenamiento jurídico. El Artículo 1206 del Código Civil de 1930 dispone que un contrato nace a la vida jurídica cuando una o varias personas consienten a obligarse. 31 LPRA sec. 3371.[4] El principio de *pacta sunt servanda* establece que "las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes". *Íd.* sec. 2994. Es decir, los contratos obligan a las partes sin importar la forma de su celebración, siempre que contengan las condiciones esenciales para su perfeccionamiento. *Íd.* sec. 3451.

Los requisitos del contrato son el consentimiento de los contratantes, el objeto cierto que sea de materia contractual y la causa de la obligación establecida. *Íd.* sec. 3391. Cuando concurren estos requisitos, se debe cumplir con lo pactado expresamente y con

---

[4] A esta controversia le aplica el Código Civil de 1930, pues los hechos ocurrieron antes de la vigencia del nuevo Código. Véase, Artículos 1802 y 1803 del Código Civil de 2020, 31 LPRA secs. 11717-11718 que versan sobre las disposiciones transitorias aplicables a los asuntos contractuales.

sus consecuencias que sean "conformes a la buena fe, al uso y a la ley". *Íd.* sec. 3375.

El consentimiento requiere que la declaración de voluntad esté libre de vicios. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 886 (2008). Es nulo el consentimiento prestado por error, violencia, intimidación o dolo. 31 LPRA sec. 3404. El Código Civil de 1930 dispone que "[h]ay dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que, sin ellas, no hubiera hecho". *Íd.* sec. 3408.

Así, el dolo se puede entender como un engaño que facilita o provoca la celebración de un negocio jurídico o "la voluntad consciente de producir un acto injusto". *Colón v. Promo Motor Imports*, 144 DPR 659, 666 (1997).[5] El dolo también se concibe como la "negativa consciente y voluntaria del deudor a cumplir [con] su obligación" mientras realiza este acto injusto. *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 252-253 (2002); *Canales v. Pan American*, 112 DPR 329, 340 (1982).

El dolo puede ser grave o incidental. El grave provoca la nulidad del contrato mientras que el incidental solo engendra una acción en daños y perjuicios. 31 LPRA sec. 3409; *S.L.G. Ortiz-Alvarado v. Great American*, 182 DPR 48, 68 (2011). La causa de acción de nulidad por dolo en las obligaciones es irrenunciable y prescribe a los 4 años. 31 LPRA sec. 3019; Véase *Colón v. Promo Motor Imports*, supra, pág. 668.

---

[5]Además:

> El dolo se entiende como todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para el beneficio propio, en que viene a resumirse el estado de ánimo de aqu[e]l que no s[o]lo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas de él provenientes.

*Colón v. Promo Motor Imports*, 144 DPR 659, 666 (1997), citando a *Sánchez Rodríguez v. López Jiménez*, 118 DPR 701, 708 (1987), n. 3.

Al llevar una acción en daños y perjuicios o de nulidad del contrato por dolo, es necesario que el reclamante o demandante pruebe el dolo alegado, debido a que este no se presume; es decir, le corresponde el peso de la prueba a quien lleva la acción. *Mayagüez Hilton Corp. v. Betancourt*, supra, pág. 253, citando a *Colón v. Promo Motor Imports*, supra, pág. 668 y *Canales v. Pan American*, supra, pág. 668. Sin embargo, el dolo puede inferirse de las circunstancias del caso y "no tiene que ser establecido directamente". *S.L.G. Ortiz-Alvarado v. Great American*, supra, citando a *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 229 (2007).

El dolo grave se puede manifestar en diversas maneras como, por ejemplo: el engaño, el fraude, la falsa representación y la influencia indebida. *Márquez v. Torres Campos*, 111 DPR 854, 863 (1982). Incluso, pudiese ser dolo una acción por comisión u omisión. *S.L.G. Ortiz-Alvarado v. Great American*, supra, pág. 65.

Un comportamiento doloso puede constituirse por la ocultación de información o circunstancias que se consideren tan importantes como para ser un defecto oculto en el negocio jurídico que se celebre. *Márquez v. Torres Campos*, supra, pág. 865; *S.L.G. Ortiz-Alvarado v. Great American*, supra, pág. 66, citando a *García Reyes v. Cruz Auto Corp.*, supra, pág. 886. Así, el callar sobre una circunstancia neurálgica para el contrato celebrado, constituye dolo. *Márquez v. Torres Campos*, supra, pág. 871, n. 18. Sin embargo, para que el silencio resulte en dolo, debe existir un deber de informar. *S.L.G. Ortiz Alvarado v. Great American*, *supra*, pág. 66. Es decir, si hay una circunstancia importante que una parte deba saber para tomar una decisión informada y la otra parte contratante calla sobre ella para provocar que se celebre el contrato, hay dolo.

Para evaluar la existencia del dolo, se consideran algunos factores como lo son la preparación académica, la condición socioeconómica y el tipo de negocios que realiza la persona

perjudicada. *Miranda Soto v. Mena Eró,* 109 DPR 473, 478 (1980). Pese a esto, es importante destacar que estos factores se evalúan solo cuando se informaron todas las circunstancias del contrato a celebrarse, no cuando el contratante toma una decisión sin estar debidamente informado.

Además, el dolo se puede confirmar expresa o tácitamente cuando se conoce la causa de la nulidad y, cuando esta cesa, se procede con el negocio jurídico. *Acosta & Rodas, Inc. v. PRAICO,* 112 DPR 583, 617 (1982). Para que la confirmación sea válida, deben coexistir los siguientes requisitos: (1) que la persona que podría ejecutar la acción de nulidad confirme el negocio; (2) que lo haga con conocimiento del vicio contractual, y (3) que el vicio o causa de nulidad haya desaparecido. *Íd.* págs. 618-619. La figura de la confirmación del contrato solo aplica en los casos en que el contratante perjudicado conoce del vicio contractual que afecta su consentimiento.

**B.**

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, res. el 7 de enero de 2025, 2025 TSPR 1; *Serrano Picón v. Multinational Life Ins*, 212 DPR 981 (2023).[6] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193

---

[6] Véase, además: *Oriental Bank v. Caballero García,* 212 DPR 671 (2023); *Ferrer et. al. v. PRTC,* 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010).

DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión*, supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas*, supra, pág. 110.[7]

---

[7] Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que, al momento de presentar una solicitud de sentencia sumaria, se deben cumplir con los requisitos de forma: (1) exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).
Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión*, supra, págs. 215-216.

Nuestro estado de derecho le exige al TPI exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Nuestro Más Alto Foro ha pautado que este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, págs. 118-119. Es decir, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Íd.*

**III.**

En el presente recurso, nos corresponde determinar si actuó correctamente el TPI al declarar nula la *Carta de Pago y Relevo* firmada por el apelado por estar viciada de dolo y, en consecuencia, declarar *No Ha Lugar* a la moción de sentencia sumaria incoada por el apelante.

Procederemos a discutir los dos señalamientos de error en conjunto, por estar íntimamente relacionados.

El apelante alega que el TPI estuvo incorrecto al decretar que la *Carta de Pago y Relevo* que fungió como contrato de transacción es nulo por dolo en el consentimiento. Arguye que la prueba del expediente demuestra que el apelado firmó voluntariamente la carta mencionada con pleno conocimiento de sus consecuencias, lo cual, lo inhibe de presentar una acción de nulidad contractual por dolo porque confirmó el referido negocio jurídico. Además, plantea que el TPI tomó su decisión a pesar de que ninguna evidencia demostraba la existencia del dolo grave.

Por su parte, el apelado razona que Chubb y el Consejo de Titulares omitieron informarle de las admisiones de responsabilidad que la opinión de Payano implicó. Sostiene que nunca se le proveyó acceso a la información contenida en la *Factura* al Condominio Puerto Paseos del 8 de mayo de 2017 por los trabajos de plomería que realizó Payano Plumbing para identificar el origen del problema del apartamento 203. Hace hincapié en que en dicha factura se determinó que la tubería ubicada en el área del lobby "estaba saturada completamente de cemento…" y "esto pudo haber causado el desbordamiento…". [8] Esgrime que, no solo se le ocultó la opinión del perito del Consejo de Titulares y el informe del ajustador externo, sino que fue inducido a error por la posición de Chubb de que el

---

[8] Véase, *Factura*, apéndice del recurso, pág. 126.

Consejo de Titulares no era responsable de la inundación. Por tanto, reitera que todo lo anterior constituyó dolo grave que invalidó la eficacia de la *Carta de Pago y Relevo*.

Por tratarse de una sentencia sumaria, este Tribunal debe evaluar *de novo* las solicitudes a favor y en contra de tal proceder, en unión a la documentación que surge del expediente. Luego de un ponderado análisis del expediente, así como de la normativa aplicable, concluimos que los errores señalados por el apelante no se cometieron. Por tanto, no incidió, ni abusó de su discreción el TPI al conceder el remedio sumario parcial en cuestión.

Del expediente se desprende que uno de los hechos incontrovertidos incluido en la determinación sumaria del TPI es que, el 4 de junio de 2021, el apelado advino en conocimiento del *Informe/Estimado* preparado por Payano Plumbing con fecha del 24 de abril de 2017. Es decir, conoció de esto con posterioridad a la firma de la *Carta de Pago y Relevo*. Del contenido del *Informe/Estimado* suscrito por Payano, se aprecia que éste al realizar la inspección con cámara observó "lo que aparenta ser una pieza rota en el área del *lobby* donde hace el cambio de dirección de vertical a horizontal. Según los planos del condominio esta tubería que recoge los lavamanos es un bajante de 3" vertical hasta el *lobby*." El aludido plomero recomendó al Consejo de Titulares del Condominio Puerto Paseos reparar la tubería y pieza del área del lobby. A su vez, recomendó cortar la tubería para verificarla y así conocer si tenía algún problema adicional hasta el alcantarillado fuera del Condominio.

En armonía con lo anterior, la información contenida en la *Factura* del 8 de mayo de 2017 revela que Payano encontró que la tubería del área del *lobby* del Condominio estaba "saturada de cemento y debido a esto no fluían las aguas sanitarias correctamente. Esto pudo haber causado el desbordamiento del

apartamento 203, ya que la pieza que se sac[ó] es la que recogía específicamente esa línea de lavamanos de los pisos 2 y 3".

El hecho de que estos documentos no fueron divulgados al apelado define el panorama que tenemos ante nos. Este hecho es uno fundamental que hubiese impedido la firma del contrato de transacción por parte del apelado, toda vez que éste aceptó una cantidad inferior por los daños sufridos, bajo el entendimiento de que el Condominio no era responsable por la inundación ocurrida en abril de 2017.

Independientemente del nivel de educación del apelado o de la disposición del apelante, hubo una omisión de información por parte de Chubb sobre circunstancias fundamentales que viciaron el consentimiento prestado cuando se firmó la *Carta de Pago y Relevo*. Esto hace imposible que el apelado haya confirmado el contrato de transacción porque desconocía de su defecto. De haber sabido que había una posibilidad de que el Condominio fuese responsable, el negocio jurídico no se hubiese llevado a cabo.

En conclusión, el callar sobre la existencia de estos informes hace que en este caso el consentimiento estuvo viciado. En su consecuencia colegimos que, el contrato referido adolece de dolo grave que lo hace ineficaz. Por tanto, sostenemos la determinación del TPI.

**IV.**

Por los fundamentos antes expuestos, confirmamos el dictamen apelado.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones