Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| AGMA SECURITY SERVICE, INC.<br><br>Apelante<br><br>v.<br><br>CULTIVE CULTURE CC, INC.<br><br>Apelado | TA2025AP00344 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso número: AG2023CV00525<br><br>Sobre: Cobro de Dinero |
| --- | --- | --- |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 9 de diciembre de 2025.

Comparece la parte apelante, AGMA Security Service, Inc., mediante el recurso de epígrafe, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, el 24 de julio de 2025, notificada el 30 de julio del mismo año. Mediante esta, el foro primario desestimó la *Demanda* de epígrafe sobre cobro de dinero que la parte apelante instó en contra de la parte apelada, Cultive Culture CC, Inc.

Por los fundamentos que se exponen a continuación, se confirma la *Sentencia* apelada. Veamos.

### I

El 11 de abril de 2023, AGMA Security Service, Inc. (AGMA o parte apelante) presentó una *Demanda* sobre incumplimiento de contrato y cobro de dinero en contra de Cultive Culture CC, Inc. (Cultive Culture o parte apelada).[1] En esencia, alegó que brindó un servicio de seguridad a Cultive Culture en sus instalaciones de

---

[1] Entrada núm. 1 del caso núm. AG2023CV00525 del SUMAC.

cultivo de cannabis medicinal, las cuales ubican en el Municipio de Moca y que la parte apelada incumplió la obligación suscrita mediante contrato de realizar los pagos correspondientes por el servicio brindado. Como remedio, reclamó el pago de $49,305.44 por concepto de servicios prestados y no pagados, cuantía que incluye los intereses y penalidades aplicables, de conformidad con el contrato suscrito.

El 18 de mayo de 2023, Cultive Culture presentó una *Contestación a Demanda y Demanda contra Terceros*.[2] Como tercero demandado, la parte apelada trajo al pleito a la empresa PR Investment Group, LLC. (PR Investment o tercero demandado).

Luego de una serie de incidencias procesales, el 24 de agosto de 2023, la parte apelante presentó una *Solicitud de Sentencia Sumaria*.[3] Por su parte, el 27 de septiembre de 2025, Cultive Culture presentó una *Oposición a Solicitud de Sentencia Sumaria*.[4]

Tras evaluar la moción dispositiva instada por AGMA, y el escrito de oposición presentado por Cultive Culture, el 20 de diciembre de 2025, el foro *a quo* emitió una *Resolución*, mediante la cual la declaró No Ha Lugar.[5] Ello, tras identificar las controversias siguientes:

1) Si Cultive Culture solicitó y contrató los servicios de Agma.

2) Si quien solicitó, contrató y recibió los servicios de Agma fue PR Investment.

3) Si para la fecha en que Agma suscribió el contrato con PR Investment estuvo en posesión de la propiedad y a cargo de la operación y administración de los bienes de Cultive Culture.

4) Si Luis A. Quiñones estaba autorizado para suscribir contratos a nombre de Cultive Culture.

---

[2] Entrada núm. 5 del caso núm. AG2023CV00525 del SUMAC.
[3] Entrada núm. 18 del caso núm. AG2023CV00525 del SUMAC.
[4] Entrada núm. 29 del caso núm. AG2023CV00525 del SUMAC.
[5] Entrada núm. 31 del caso núm. AG2023CV00525 del SUMAC.

En cuanto a PR Investment, es importante mencionar que nunca contestó la demanda contra tercero que la parte apelada instó en su contra. En consecuencia, el 2 de febrero de 2024, la parte apelada instó una *Solicitud de Anotación de Rebeldía*, en la que reclamó que el foro primario le anotase la rebeldía al tercero demandado.[6] Tras considerar esta solicitud, el foro *a quo* la declaró Ha Lugar, mediante un dictamen que emitió y notificó el 22 de febrero de 2024.[7]

El 24 de septiembre de 2024, AGMA presentó una *Moción en Solicitud de Orden*, en la que solicitó que el foro primario le ordenase a la Junta Reglamentadora de Cannabis (Junta Reglamentadora) certificar cierta información sobre las siguientes licencias de cultivo de cannabis: licencia #CM-2017-054 y manufactura, licencia #CM-2018-112.[8] Como justificación a su reclamo, la parte apelante sostuvo que la información era pertinente al caso de epígrafe. Ello, debido a que las mencionadas licencias fueron objeto de un *Contrato de Alquiler, Opción de Compraventa y Administración de Cultive Culture CC, Inc.*, previamente suscrito entre Cultive Culture y PR Investment.[9]

Luego de considerar la *Moción en Solicitud de Orden*, el 10 de octubre de 2024, el foro primario emitió la *Orden* requerida por la parte apelante. El referido dictamen fue notificado el 17 de octubre de 2024.[10]

Sin embargo, durante una vista llevada a cabo el 17 de diciembre de 2024, el foro *a quo* determinó que no permitiría presentar como prueba la certificación emitida por la Junta

---

[6] Entrada núm. 33 del caso núm. AG2023CV00525 del SUMAC.
[7] Entrada núm. 34 del caso núm. AG2023CV00525 del SUMAC.
[8] Entrada núm. 43 del caso núm. AG2023CV00525 del SUMAC.
[9] Los términos de la relación contractual entre Cultive Culture y PR Investment también fueron objeto de litigio en el caso núm. MO2023CV00041, en el cual el foro primario dictó una *Sentencia*, que ya es final y firme. De este hecho, este Foro está en posición de tomar conocimiento judicial.
[10] Entrada núm. 43 del caso núm. AG2023CV00525 del SUMAC.

Reglamentadora.[11] En esencia, el foro primario razonó que el descubrimiento de prueba ya había finalizado. Asimismo, detalló que la Junta Reglamentadora emitió la certificación en diciembre, a pesar de que la orden que se le dirigió se remonta a octubre y que esta fue emitida por error, toda vez que esa información no es relevante, en consideración al hecho de que la *Demanda* de epígrafe consta de un caso sencillo de cobro de dinero.

El 16 de junio de 2025, se llevó a cabo el juicio en su fondo.[12] Durante este, tanto AGMA como Cultive Culture presentaron prueba documental[13] y testifical, que incluyó los testimonios de Edgardo Toro Chiques, presidente de AGMA y Héctor Cortés Torres, presidente y agente residente de Cultive Culture. Tras aquilatar la prueba presentada, el 24 de julio de 2025, el foro primario emitió la *Sentencia* apelada, la cual fue notificada el 30 de julio del mismo año.[14]

En virtud del dictamen apelado, el foro *a quo* declaró No Ha Lugar la *Demanda* instada por AGMA y la desestimó a favor de Cultive Culture. Asimismo, resolvió que también procedía desestimar la *Demanda contra Tercero* instada por Cultive Culture en contra de PR Investment, por considerar que, durante el juicio, no desfiló prueba alguna en su contra. En síntesis, el foro primario concluyó que el contrato objeto de controversia no fue suscrito entre AGMA y Cultive Culture, sino entre AGMA y PR Investment. Ello, toda vez que Luis A. Quiñones fue quien compareció a contratar con AGMA, lo cual hizo en representación del tercero demandado, y no

---

[11] Véase la *Minuta* de esta vista, la cual fue notificada a las partes el 20 diciembre de 2025. Entrada núm. 53 del caso núm. AG2023CV00525 del SUMAC.
[12] Véase la *Minuta* del juicio, la cual fue notificada a las partes el 20 junio de 2025. Entrada núm. 69 del caso núm. AG2023CV00525 del SUMAC.
[13] La prueba documental por estipulación que el foro primario admitió en evidencia constó de los siguientes documentos: a) Certificado de incorporación de AGMA Security; b) Certificado de incorporación de Cultive Culture CC, Inc.; c) Contrato de Servicios de Seguridad; d) Carta de cobro y anejos de AGMA a Cultive Culture; e) Comunicación sobre cancelación de contrato de Cultive Culture a AGMA; f) Contrato de Alquiler, Opción de Compraventa y Administración entre Cultive Culture y PR Investment.
[14] Entrada núm. 70 del caso núm. AG2023CV00525 del SUMAC.

a nombre de Cultive Culture, a pesar de que se presentó como representante de la parte apelada.

En desacuerdo, el 18 de agosto de 2025, la parte apelante presentó oportunamente una *Moción de Determinaciones Adicionales de Hecho y Derecho y Reconsideración de Sentencia*.[15] Ese mismo día, el foro primario declaró No Ha Lugar, tanto la solicitud de determinaciones de hechos adicionales, como la solicitud de reconsideración.[16]

Todavía inconforme, el 17 de septiembre de 2025, AGMA acudió ante este Foro mediante el recurso de apelación que nos ocupa, en el que señaló los siguientes errores:

> Erró el Tribunal de Primera Instancia al excluir de la *Sentencia* varios hechos materiales y esenciales probados en el juicio mediante testimonios y prueba documental.

> Erró el Tribunal de Primera Instancia al no determinar que le correspondía a Cultive Culture CC, Inc., el pago de la deuda reclamada por AGMA Security Services, Inc., por los servicios de seguridad prestados entre el 24 de mayo de 2022 y el 22 de agosto de 2022.

Ese mismo día, la parte apelante presentó una *Moción en Solicitud de Término para Someter Regrabación de Testimonio de Vista y Alegato Suplementario*. El 19 de septiembre de 2025, emitimos una *Resolución*, que fue notificada el 22 de septiembre del mismo año, en la que le concedimos a la parte apelante un término de veinte (20) días para someter la regrabación de los procedimientos llevados a cabo el 16 de junio de 2025 y para presentar el alegato suplementario. Asimismo, dispusimos que la parte apelada tendría un término de treinta (30) días para presentar su alegato en oposición, los cuales comenzarían a transcurrir a partir de la fecha de presentación del alegato suplementario de la parte apelante.

---

[15] Entrada núm. 72 del caso núm. AG2023CV00525 del SUMAC.
[16] Entrada núm. 73 del caso núm. AG2023CV00525 del SUMAC.

Tras solicitar una prórroga, el 21 de octubre de 2025, la parte apelante presentó la mencionada regrabación. Asimismo, presentó un escrito que tituló *Alegato Suplementario al Amparo de la Regla 21*. De otra parte, el 21 de noviembre de 2025, venció el término de treinta (30) días con que Cultive Culture contaba para presentar un alegato en oposición, mas no compareció a expresarnos su postura.

Así, tras evaluar los méritos del recurso ante nos y escuchar la regrabación de los procedimientos, así como a pesar de no contar con la comparecencia escrita de la parte apelada, resolvemos.

## II

### A

Sabido es que este Tribunal de Apelaciones actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Por tanto, nuestra encomienda principal es examinar cómo los tribunales de menor jerarquía aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.*

Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro primario. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función del Tribunal de Primera Instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux,* 156 DPR

488, 495 (2002). Así, el Tribunal Supremo considera que este foro apelativo intermedio "tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).

Asimismo, es norma básica que estamos en posición de revisar en su totalidad las conclusiones de derecho. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales de menor jerarquía, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros revisores para pasar juicio sobre la apreciación de la prueba por parte del foro primario, así como su adjudicación de credibilidad o las determinaciones de hechos que haya formulado, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 774 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro adjudicador está en mejor posición que un foro revisor para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

De este modo, en consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra

utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654, 671 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

Sobre ese particular, el Tribunal Supremo ha reiterado que las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. *Pueblo v. Pérez Delgado*, supra. Véase, *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 290 (2011). De esa manera, los abogados tienen la obligación de cumplir fielmente con el trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos. *Íd.* Entiéndase, no puede quedar al arbitrio de la representación legal decidir qué disposiciones reglamentarias aplican y cuándo. *Íd.* Por tanto, es tarea de la parte peticionaria presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del foro *a quo. Íd.*

**B**

En nuestra jurisdicción, un contrato "es un negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Artículo 1230 del *Código Civil de Puerto Rico de 2020*, Ley Núm. 55-2020, según enmendada, 31 LPRA sec. 9751. Así, entre las partes contratantes, las obligaciones que surgen de estos tienen "fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". Artículo 1233 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 9754. De este modo, "[e]l contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa [...]".

Artículo 1237 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 9771.

En materia de interpretación de los negocios jurídicos bilaterales, la norma cardinal es que, cuando sus términos son claros, y no dejan lugar a dudas sobre la intención de las partes, se estará al sentido literal de sus palabras. Véase, Artículo 354 del *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 6342. Sobre el particular, el Tribunal Supremo considera que los términos de un contrato se reputan claros "cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *S.L.G. Francis–Acevedo v. SIMED*, 176 DPR 372, 387 (2009). Así, los tribunales no pueden entrar a dirimir sobre lo que las partes presuntamente intentaron pactar al momento de contratar. *C.F.S.E. v. Unión de Médicos*, 170 DPR 443, 450 (2007).

Sobre la norma de interpretación de los contratos, es preciso destacar que el Alto Foro ha puntualizado lo siguiente:

> [A]l momento de interpretar un contrato es preciso presuponer lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a los resultados conformes a la relación contractual y que estén de acuerdo con las normas éticas.

*SLG Irizarry v. SLG García*, 155 DPR 713, 726 (2001).

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

### III

A continuación, procederemos a la discusión conjunta de los dos señalamientos de error formulados por la parte apelante, debido a que son susceptibles de discusión conjunta. Mediante estos, AGMA adujo que el foro primario incidió al excluir de la *Sentencia* varios hechos materiales y esenciales que entiende fueron probados

en el juicio, mediante testimonios y prueba documental. Asimismo, que erró al no determinar que a Cultive Culture le correspondía responder por el pago de la deuda reclamada en la *Demanda* de epígrafe, por concepto de los servicios de seguridad prestados entre el 24 de mayo de 2022 y el 22 de agosto de 2022. Como veremos a continuación, no tiene razón.

En lo pertinente, tras aquilatar la prueba presentada por ambas partes, el foro primario determinó como hecho probado que, el **24 de mayo de 2022**, AGMA suscribió un contrato para brindar servicios de seguridad en las instalaciones de Cultive Culture, las cuales ubican en el Municipio de Moca, y donde la parte apelada se dedica al cultivo de cannabis medicinal. Según determinó el foro *a quo*, dicha relación contractual se extendió hasta el **22 de agosto de 2022**, fecha en que Héctor Cortés Torres, presidente de Cultive Culture, canceló el contrato.

Asimismo, el foro primario consideró probado que AGMA proveyó el servicio objeto del contrato durante el periodo en que subsistió esta relación contractual y que le notificó a Cultive Culture el cobro del balance pendiente por los servicios prestados, de conformidad con los términos y condiciones del contrato. Así, el foro *a quo* también determinó como hecho probado que, al **24 de diciembre de 2022**, la mencionada deuda ascendía a **$49,305.44**, cuantía que incluye las penalidades e intereses, según se pactó en el contrato. No obstante, de los hechos que el foro primario determinó probados, reviste importancia particular citar de modo textual las determinaciones de hechos #13, 17 y 18:

> 13. El contrato suscrito por AGMA fue firmado por Luis A. Quiñones, quien según el Certificado de Organización de PR Investment en el Registro de Corporaciones y Entidades del Departamento de Estado es agente residente, persona autorizada y administrador de la referida corporación.
>
> […]

17. El contrato de servicios de seguridad fue firmado por Luis Quiñones, quien representa a PR Investment, conforme al Contrato de Alquiler y Opción de Compraventa [que dicha empresa había suscrito con Cultive Culture].

18. El Sr. Quiñones compareció al contrato de servicios de seguridad, expresando representar a Cultive Culture, sin embargo, surge tanto de la prueba documental como testifical, que este nunca ha sido empleado o representante de esta corporación.[17]

Así, basado en las referidas determinaciones de hechos, el foro primario detalló, en lo pertinente, lo siguiente:

Al momento de otorgar el contrato, la parte demandante, aun cuando otorgaba un contrato con un ente jurídico, no le requirió Resolución corporativa que acreditara que el Sr. Quiñones en efecto representaba a Cultive Culture. AGMA, estuvo brindando servicios de seguridad en el lugar que estaba bajo control de PR Investment, por lo que debía conocer, que Cultive Culture había cedido la administración de dicha empresa a PR Investment.[18]

En primer lugar, comenzamos por subrayar que, de conformidad con el estándar de deferencia que rige nuestro criterio revisor, no nos encontramos en posición de interferir con el ejercicio llevado a cabo por el foro primario al formular las determinaciones de hechos que consignó en la *Sentencia* apelada. Ello pues, tras un examen de la regrabación de los procesos ante el foro *a quo*, consideramos que estas se apoyan en la prueba presentada. Del mismo modo, consideramos que estas bastan para concluir que AGMA contrató con PR Investment, mas no con Cultive Culture.

Así también, resulta indispensable añadir que no es posible realizar un análisis completo del caso ante nos, de espalda al hecho de que la relación contractual que existió entre Cultive Culture y PR Investment, en virtud del mencionado *Contrato de Alquiler, Opción de Compraventa y Administración de Cultive Culture CC, Inc.,* fue objeto de litigio en el caso núm. MO2023CV00041. Tanto la

---

[17] *Sentencia*, págs. 2-3. Entrada núm. 70 del caso núm. AG2023CV00525 del SUMAC.

[18] *Sentencia*, págs. 5-6. Entrada núm. 70 del caso núm. AG2023CV00525 del SUMAC.

existencia del referido pleito, como su trámite procesal y disposición final son asuntos respecto a los cuales este Foro se encuentra en posición de tomar conocimiento judicial.

De este modo, resaltamos que el caso núm. MO2023CV00041 se originó el 31 de marzo de 2023, cuando Cultive Culture instó una *Demanda* en contra de PR Investment, por el incumplimiento del referido contrato, así como cobro de dinero y daños y perjuicios.[19] Luego de una serie de incidecias procesales, el foro primario dispuso del caso por la vía sumaria, mediante una *Sentencia* que emitió el 31 de enero de 2025 y que fue notificada el 3 de febrero del mismo año.[20] Ello, por entender que no había controversias de hechos esenciales que hicieran necesaria la celebración de un juicio en su fondo. Así, declaró Ha Lugar la *Demanda* instada por Cultive Culture en contra de PR Investment y concluyó que esta última incumplió con sus obligaciones contractuales. El referido dictamen no fue apelado, por lo que, al día de hoy, es final y firme, y sus pronunciamientos nos obligan como parte del presente análisis, en la medida que constituyen la ley del caso.[21]

En lo que nos compete, en esa ocasión, el foro *a quo* determinó que, en efecto, Cultive Culture y PR Investment suscribieron un *Contrato de Alquiler, Opción de Compraventa y Administración de Cultive Culture CC, Inc.,* cuya vigencia comenzó el 8 de diciembre de 2021 y se extendió hasta el **22 de agosto de 2022**, fecha en que Cultive Culture canceló el referido contrato. La validez de este curso de acción por parte de Cultive Culture fue objeto de litigio; sin embargo, en la *Sentencia* aludida, el foro primario concluyó que la

---

[19] Entrada núm. 1 del caso núm. MO2023CV00041 del SUMAC.
[20] Entrada núm. 182 del caso núm. MO2023CV00041 del SUMAC.
[21] Sobre esta doctrina, el Tribunal Supremo ha reiterado lo siguiente: "En nuestra jurisdicción, los derechos y las obligaciones adjudicados mediante un dictamen judicial, que adviene final y firme, constituyen la ley del caso". *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 8 (2016); *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 606 (200); *Sánchez Rodríguez v. López Jiménez*, 118 DPR 701, 704 (1987).

cancelación fue válida y que respondió al incumplimiento por parte de PR Investment con obligaciones esenciales que emanaban del mencionado contrato. Nótese que, en el caso de epígrafe, también se determinó como un hecho probado que fue precisamente el **22 de agosto de 2022** que, a su vez, Héctor Cortés Torres, presidente de Cultive Culture, canceló el contrato de servicios de seguridad objeto de controversia en el caso de epígrafe.

En cuanto a lo resuelto en el caso núm. MO2023CV00041, es pertinente recalcar que el foro primario también consideró incontrovertido que Luis A. Quiñones ya había incurrido en una serie de falsas representaciones que se tradujeron en la falta de pago de cuentas cuantiosas e importantes, hasta llegar a acumular miles de dólares en deudas, en detrimeto de Cultive Culture.[22] Ello, a pesar de que PR Investment se había obligado, en virtud del *Contrato de Alquiler, Opción de Compraventa y Administración de Cultive Culture CC, Inc.*, a administrar a Cultive Culture, lo cual incluía el pago de las cuentas principales de la empresa.[23]

Incluso, surge de la *Sentencia* que, como parte del proceso de descubrimiento de prueba, Cultive Culture le requirió a PR Investment "presentar evidencia de haber pagado a AGMA por servicios de seguridad provistos a PR Investment, a la Propiedad o a la Producción de Cannabis durante el Periodo Relevante".[24] Asimismo, surge de la misma *Sentencia* que PR Investment incumplió el referido requerimiento.[25] Así también, el foro *a quo* declaró Ha Lugar la causa de acción por daños y perjucios instada

---

[22] *Sentencia*, pág. 33. Entrada núm. 70 del caso núm. MO2023CV00041 del SUMAC.

[23] El Artículo Treinta y Tres del *Contrato de Alquiler, Opción de Compraventa y Administración de Cultive Culture CC, Inc.*, suscrito entre Cultive Culture y PR Investment dispone lo siguiente: "Bajo ningún concepto la parte Arrendadora vendrá obligada a repagar mejoras, gastos operacionales y gastos por mantenimiento en que el Arrendatario incurra durante la vigencia del presente contrato y en el supuesto de que no ejerza la opción de compraventa".

[24] *Sentencia*, pág. 16. Entrada núm. 70 del caso núm. MO2023CV00041 del SUMAC.

[25] *Sentencia*, pág. 16. Entrada núm. 70 del caso núm. MO2023CV00041 del SUMAC.

por Cultive Culture en contra de PR Investment, tras concluir que "[l]a falta de capital, demostrada por tan completa falta de pago de las principales cuentas de la empresa, fue la condición preexistente y causa directa de los daños sufridos por Cultive Culture a consecuencia del impago [...]".[26]

En fin, cuando se analizan en conjunto, tanto la *Sentencia* apelada, como la *Sentencia* emitida en el caso núm. MO2023CV00041, es forzoso concluir que el contrato de servicios de seguridad que aquí nos ocupa, fue suscrito entre AGMA y PR Investment, y no entre AGMA y Cultive Culture. En ese sentido coincidimos y suscribimos las expresiones siguientes, consignadas por el foro *a quo* en la parte dispositiva de la *Sentencia* apelada:

> De existir una relación contractual, la misma debió haberse presentado contra PR Investment, sin embargo, nunca se solicitó enmendar [la] demanda a esos efectos, ni se presentaron alegaciones por la parte demandante, aun cuando esta parte, entiéndase, PR Investment Group LLC fue traída al pleito como tercero demandado, por Cultive Culture.[27]

En virtud de todo lo anteriormente expresado, nos resulta forzoso concluir que el foro primario no cometió los errores señalados por la parte apelante. En consecuencia, procede confirmar la *Sentencia* apelada.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[26] *Sentencia*, págs. 33-34. Entrada núm. 70 del caso núm. MO2023CV00041 del SUMAC.
[27] *Sentencia*, pág. 6. Entrada núm. 70 del caso núm. AG2023CV00525 del SUMAC.